OPINION
{¶ 1} Dorrian A. Harden appeals from a judgment of the Montgomery County Court of Common Pleas, which found him guilty of possession of cocaine. Harden had pled no contest to the charge after the trial court overruled his motion to suppress evidence.
 {¶ 2} The state's version of events was as follows:
 {¶ 3} On June 7, 2002, Dayton Police Officers Timothy Braun and Doug Hall were on patrol together in an area known for high crime rates and drug activity. At approximately 1:45 p.m., Harden passed them on Blommel Street coming from the opposite direction in a car that the officers believed to have excessively tinted windows. The officers turned their cruiser around to follow Harden, and Officer Braun ran the car's license plate number through the computer. The cruiser's computer revealed that the car's license plates had expired a few days earlier. The officers then effectuated a traffic stop.
 {¶ 4} As the officers approached Harden's car, they saw him moving around inside, leaning down toward the floorboards, and "rais[ing] up in his seat." These movements caused the officers to fear that Harden might be arming himself with a weapon. Then, before the officers reached the side of Harden's car, he opened the driver's door, put his left foot onto the pavement, and waved some papers in the air. The officers were concerned that this action might evince an intent to flee. Because Harden was stopped in a lane of travel, they were also concerned that the opened door might interfere with other traffic and that they and Harden might be in danger. Thus, the officers asked Harden to step to the rear of his vehicle, where they conducted a frisk for weapons.
 {¶ 5} While patting around Harden's waistband, Officer Hall felt a bulge just beneath the waistband that he knew to be crack cocaine. The officers stated that Officer Hall had to manipulate the bag of cocaine a little bit through Harden's clothing to get part of it above the waistband, at which point he could pull it out easily. The officers placed Harden under arrest and impounded his car. The car was searched pursuant to police procedures, and police found a .45 caliber semi-automatic gun, as well as marijuana and money.
 {¶ 6} Harden was charged with possession of crack cocaine in an amount equal to or greater than twenty-five grams but less than one hundred grams, in violation of R.C. 2925.11(A). Harden pled not guilty and filed a motion to suppress evidence on the grounds that the officers had not had a specific articulable suspicion that he had been engaged in criminal activity, that the traffic stop had been pretextual, and that he had been stopped based on unlawful racial profiling. The trial court conducted a hearing on the motion on August 29 and November 5, 2002, and it overruled the motion. Harden changed his plea to no contest, whereupon he was convicted and sentenced to three years in prison.
 {¶ 7} Harden raises one assignment of error on appeal.
 {¶ 8} "The court prejudicially erred in finding that the arrest of the defendant and subsequent forceful and coercive search and seizure for minor misdemeanor traffic violations was permitted by the constitution of the united stated and the constitution of the state of ohio."
 {¶ 9} Harden claims that he was stopped due to racial profiling rather than for the license plate and tinted window violations cited by the state. He claims that he was cooperative and that the officers' claims of observing furtive movements in the car "smack of confabulation." His argument suggests that the officers habitually stopped black males for flimsy reasons in order to search their cars for evidence of illegal activity. He claims that "[t]hese police officers are notorious for the same type of testimony and the same type of cases involving black males the police wish to stop and search for no reason."
 {¶ 10} There are numerous problems with Harden's argument. First, he presented no evidence whatsoever to support the alleged pattern by the police officers of seeking out black men to stop and search "for no reason." Second, the police officers did have a valid reason to stop Harden. Although Harden claimed that the person who tinted his windows assured him that the tint level was legal, the test performed by the police indicated that it was not at a legal level. Moreover, Harden himself introduced testimony from Major Steven M. Raubenolt of the Ohio State Highway Patrol that Harden's license plate had expired three days prior to the June 7, 2002, traffic stop.
 {¶ 11} The supreme court has held that traffic stops based on probable cause are not illegal even if the police officer has other motivations as well. Dayton v. Erickson (1996),76 Ohio St.3d 3, 10, 1996-Ohio-431, 665 N.E.2d 1091. "[W]here a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." Id. Thus, given that Harden himself admits the license plate violation, the police officers' alleged ulterior motives would not have invalidated the traffic stop.
 {¶ 12} The rest of Harden's arguments turn on the credibility of the witnesses. Witness credibility is primarily a matter for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus; State v. Bailey
(Aug. 21, 1998), Greene App. No. 97CA128. Harden testified that he had offered his license and insurance papers to the police but that they had opened his car door, pulled him out, and "slammed" him onto his car. He also claimed that one officer had "started putting his hands * * * down in my crouch [sic]" from the front while the other officer had put his hands down the back of his pants, all without rubber gloves, to uncover the contraband Comparing this testimony with that of the police officers, the trial court could have reasonably concluded, as it did, that Harden's testimony lacked credibility.
 {¶ 13} It is well established that, in effectuating a lawful traffic stop, police officers may order a driver to get out of a vehicle without violating the Fourth Amendment's proscription on unreasonable searches and seizures, even without suspicion of other criminal activity. Pennsylvania v. Mimms (1977),434 U.S. 106, 111. fn. 6, 98 S.Ct. 330, 54 L.Ed.2d 331; State v. Evans,67 Ohio St.3d 405, 407, 1993-Ohio-186, 618 N.E.2d 162. Officers may also conduct a pat-down search for weapons if they have a specific and articulable belief based on a reasonably prudent man standard that an individual is armed and dangerous. Terry v.Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868, 1880, 1883,20 L.Ed.2d 889; State v. Lozada, 92 Ohio St.3d 74, 75, 2001-Ohio-149;748 N.E.2d 520. We agree with the trial court that Officers Hall and Braun were justified in asking Harden to step from his car because they had effectuated a lawful traffic stop. We also agree that the officers were justified in conducting a pat-down search for weapons for their own safety because of Harden's movements of raising his body off the seat and reaching toward the floorboard as they approached his car. Thus, the pat-down search that yielded the crack cocaine was not unlawful.
 {¶ 14} The trial court properly overruled Harden's motion to suppress evidence.
 {¶ 15} The judgment of the trial court will be affirmed.
Fain, P.J. and Brogan, J., concur.