UNITED STATES of America,
Plaintiff-Appellee,

v.

Anthony **HARDNETT**,
Defendant-Appellant.

No. 85–1636.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 25, 1986.

Decided Nov. 6, 1986.

Edward F. Marek, Federal Public Defender, Cleveland, Ohio, Michael G. Dane (argued), for defendant-appellant.

Phyllis M. Golden (argued), Detroit, Mich., for plaintiff-appellee.

Before KEITH and KENNEDY, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Anthony Hardnett appeals his jury conviction of being a felon in possession of a firearm in violation of 18 App. U.S.C. § 1202(a)(1). On appeal, Hardnett challenges the district court's denial of his motion to suppress evidence obtained in a search of his person. Hardnett argues that the stop of an automobile containing himself and three other individuals, which precipitated the search of his person, was not an investigatory stop pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), but was effectively an arrest which was unsupported by probable cause. For the reasons that follow, we affirm Hardnett's conviction.

## I.

On January 24, 1985, Hardnett was charged in an indictment with being a felon in possession of a firearm in violation of 18 App. U.S.C. § 1202(a)(1). Count One of the indictment alleged that Hardnett had previously been convicted of "assault with intent to do great bodily harm less than murder" and that on December 29, 1984 he possessed two firearms-a Rohm .22 caliber revolver and a Cheskoslevenska Zbrojovka 8 mm. bolt action rifle.

On April 19, 1985, Hardnett filed a motion to suppress evidence; namely, the firearms. At the suppression hearing, Detroit police officer George Ball testified that on December 29, 1984, he and his partner Joseph Shaw received a call from Officers Lawrence Wideman and Harry Romolino that "there were men armed with guns in front of 1251 Meadowbrook in a burgundy Pontiac." According to Ball, he and Shaw arrived at the scene at approximately the same time as Wideman and Romolino and they stopped the suspected vehicle. Shaw was the first officer to approach the car, and when the driver, Hardnett, opened his car door Shaw stated that there was a rifle on the floor. Ball looked and also saw a rifle on the floor under Hardnett's legs.

Ball then "took the driver, patted him down [and] found a nickel-plated revolver in his waistband."

Officer Shaw also testified at the hearing. He stated that when he and Ball arrived at the scene they observed the vehicle in question, occupied by four black males. They passed the car, stopped in the middle of the street in front of it and left their police car. When the Pontiac started to pull away from the curb, the officers "ordered the car to stop and ... ordered the occupants out of the vehicle." The driver then opened his door. Shaw shined his flashlight towards the driver and saw the barrel of a rifle on the floor in the front seat.

Officer Wideman testified that on the night in question Dorothy Maples "flagged down" his police car by honking her car's horn and pulling alongside. According to Wideman, Maples stated that "there were men in front of her house armed with guns, and that they had come over earlier and had threatened her, and they had now returned." She also stated that some shots had been fired the previous night. Maples told Wideman that the men, four black males, were in a red, late-model Pontiac. When asked about the basis of her information, Maples stated that "she saw a man in the back seat with a rifle." Based on Maples' information, Wideman and Romolino requested a backup and proceeded to the scene. Upon arrival they pulled up behind a vehicle fitting Maples' description, boxing it in between their police car and the cruiser occupied by Ball and Shaw. They exited their car, approached the suspected vehicle, and ordered everyone out of the car at gunpoint. As Wideman opened a rear door of the car, he saw a rifle laying on the floor in the back seat. Wideman identified Hardnett as the driver of the car.

Vanessa MacLemore, Special Agent with the Bureau of Alcohol, Tobacco and Firearms, testified that she interviewed Maples in connection with the investigation of the Hardnett case. Maples stated that when she was getting into her car on the night in question a seven or eight year old girl told

her that there were men with guns in a car near her house. Maples approached the police car on the basis of this information. Maples admitted that she did not see the car or guns prior to contacting the police.

Officer Romolino also testified as to events on December 29, 1984. Maples told him that there were men with guns in a burgundy Pontiac at 1251 Meadowbrook and that she saw the guns. Romolino and Wideman proceeded in their cruiser to that area and, along with Ball and Shaw, boxed in the Pontiac. When it attempted to maneuver out from between the two police cars, the officers drew their guns and ordered it to stop.

Based on this testimony, the district court denied Hardnett's motion to suppress. The court characterized the police officers' conduct as an investigative stop governed by the principles of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), rather than as an arrest which had to be based on probable cause. The court concluded that the officers had a "reasonable suspicion" that criminal activity existed which justified their investigative stop under *Terry.* The court found it "noteworthy that defendants took evasive action, and they didn't emerge readily from the car, immediately, to cooperate with the policemen; they were attempting to get away from that area when the police car arrived." Since the stop was permissible, the court found that the officers properly obtained the rifles which were in plain view. It also approved the protective patdown of Hardnett and the seizure of the pistol he was carrying.

Hardnett's jury trial commenced on April 24, 1985, and on April 29, 1985, the jury returned a verdict of guilty. The district court sentenced Hardnett to two years imprisonment on July 19, 1985. This timely appeal followed.

## II.

Hardnett claims error in the district court's denial of his motion to suppress. He argues that the officers effectuated an arrest when they blocked his car, approached the car with guns drawn, and ordered him and the other occupants out of the car at gunpoint. Hardnett also asserts that the police lacked probable cause to arrest him at that point. Therefore, Hardnett concludes, his seizure was invalid under the Fourth Amendment and the firearms should have been suppressed as the fruit of an illegal seizure.

In contrast, the government argues that the police officers performed an investigative stop which was supported by reasonable suspicion based on information known to them and therefore permissible under *Terry v. Ohio, supra.* The government further contends that the police officers properly frisked Hardnett as part of their investigative stop. The government concludes that the officers' seizure of the handgun found on Hardnett and the rifles seen in plain view in the car was valid under the Fourth Amendment and provided probable cause for Hardnett's arrest.

Our first inquiry is whether the police officers effectuated an arrest of Hardnett when they blocked his car, approached with their weapons drawn and ordered him out of the car, or whether their confrontation only constituted an investigative stop. There is no doubt that a seizure within the meaning of the Fourth Amendment occurred; we simply must determine whether that seizure rose to the level of an arrest.

An arrest unsupported by probable cause violates the Fourth Amendment. The test for probable cause is whether "facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, [to believe], in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979). *See also Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964).

Beginning with *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), however, the Supreme Court recognized that certain investigative seizures of an

individual need not be supported by probable cause. In *Terry*, the Court held that a police officer may conduct a "stop" and "frisk" of an individual "for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest" so long as the officer is "able to point to specific and articulable facts" which give rise to a reasonable suspicion of criminal activity. *Id.* at 21–22, 88 S.Ct. at 1879–80. In assessing the reasonableness of the stop, the facts are "judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Id.* The Court further stated that in a *Terry* stop situation, the Fourth Amendment permits

> a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

*Id.* at 27, 88 S.Ct. at 1883.

The question of whether an investigative stop crosses the line and becomes an arrest has spawned much judicial discussion, resulting in the development of various guidelines for examining the question. For example, the determination of whether an arrest has occurred is not dependent on whether the citizen is formally placed under arrest or whether the seizure would be considered an arrest under state law. *Dunaway v. New York*, 442 U.S. 200, 212–13, 99 S.Ct. 2248, 2256–57, 60 L.Ed.2d 824 (1979). Rather, a seizure may be considered an arrest, and probable cause for the seizure may be required, when a detention is "in important respects indistinguishable from a traditional arrest." *Id.* at 212, 99 S.Ct. at 2256. However, given the "endless variations in the facts and circumstances," there is certainly no "litmus-paper test for determining when a seizure exceeds the bounds of an investigative stop" and becomes an arrest. *Florida v. Royer*, 460 U.S. 491, 506, 103 S.Ct. 1319, 1329, 75 L.Ed.2d 229 (1983).

■ As indicated by the language in *Terry*, resolving the question of whether a seizure is an investigative stop, rather than an arrest, generally depends on the reasonableness of the stop under the circumstances. The reasonableness is determined by examining two factors: (1) whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to a reasonable suspicion; and (2) whether the degree of intrusion into the suspect's personal security was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances. *Terry*, 392 U.S. at 19–20, 88 S.Ct. at 1878–79; *see also United States v. Vasquez*, 638 F.2d 507, 520 (2d Cir.1980), *cert. denied*, 454 U.S. 975, 102 S.Ct. 525, 70 L.Ed.2d 396 (1981).

■ With regard to the first inquiry, we find that the officers' action in stopping Hardnett was based on specific and articulable facts which created a reasonable suspicion of criminal activity. The information offered by Maples was sufficient to give the police a reasonable suspicion that the occupants of the car they observed had guns in their possession. Officers Wideman and Romolino testified that Maples told them that there were four black men in a red or burgundy Pontiac in front of her home with guns. An informant's tip is sufficient to establish reasonable suspicion; it need not be based exclusively on an officer's personal observations. *Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). When the police arrived at the scene, they observed a vehicle matching Maples' description—a burgundy Pontiac with four black men in

it—which started to leave upon their arrival. Given these circumstances, the officers were certainly justified in stopping the car.

■ We next turn to the second inquiry and examine whether the officers' actions escalated the purported investigative stop into an arrest. Looking at all the circumstances surrounding the seizure of Hardnett, we do not find that the officers' conduct was so intrusive as to constitute an arrest. We recognize that the officers' show of force—approaching Hardnett's car with their guns drawn and ordering the occupants out of the car at gunpoint—was highly intrusive and under some circumstances would certainly be tantamount to an arrest. However, the mere use or display of force in making a stop will not necessarily convert a stop into an arrest. *United States v. Greene*, 783 F.2d 1364, 1367 (9th Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 2923, 91 L.Ed.2d 551 (1986); *United States v. White*, 648 F.2d 29, 34 (D.C. Cir.), *cert. denied*, 454 U.S. 924, 102 S.Ct. 424, 70 L.Ed.2d 233, 235 (1981). Where the display or use of arms is viewed as "reasonably necessary for the protection of the officers," the courts have generally upheld investigative stops made at gunpoint. *See White*, 648 F.2d at 34–35, and cases cited therein; *see also United States v. Danielson*, 728 F.2d 1143, 1147 (8th Cir.), *cert. denied*, 469 U.S. 919, 105 S.Ct. 300, 83 L.Ed.2d 235 (1984). That is, if the surrounding circumstances give rise to a justifiable fear for personal safety, a seizure effectuated with weapons drawn may

properly be considered an investigative stop. *See Greene*, 783 F.2d at 1367–68.

We believe that the use of arms in the present case was reasonably necessary under the circumstances. The officers were acting in a situation which justified a fear for personal safety. The officers had been told by Maples that the occupants of the car in front of her home were armed. Therefore, when the officers approached the car, it was reasonable for them to display their weapons for their own protection. Under these circumstances, the use of arms did not convert the investigative stop into an arrest.[1]

■ Nor did the mere blocking of Hardnett's car effectuate an arrest of Hardnett. Several circuits have held that blocking a vehicle generally is reasonable, and not an excessive intrusion, when the suspect is in a vehicle "because of the chance that the suspect may flee upon the approach of police with resulting danger to the public as well as to the officers involved." *United States v. Jones*, 759 F.2d 633, 638 (8th Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 113, 88 L.Ed.2d 92 (1985); *see also White*, 648 F.2d at 35. This danger of flight was particularly apparent in this case, where the suspected vehicle attempted to leave the scene until the police officers ordered it to stop. Because of this concern of flight, heightened by the officers' suspicions that the occupants of the car were armed, we conclude that the restriction of the movement of Hardnett's car was a reasonable

---

1. Other circuits have reached the same conclusion in similar circumstances. *See, e.g., United States v. Greene*, 783 F.2d 1364 (9th Cir.) (the fact that police officers drew their weapons did not convert an investigative stop into an arrest), *cert. denied*, — U.S. —, 106 S.Ct. 2923, 91 L.Ed.2d 551 (1986); *United States v. Jones*, 759 F.2d 633 (8th Cir.) (an approach to a car by officers with guns drawn did not elevate an investigative stop into an arrest because the conduct was reasonable under the circumstances), *cert. denied*, — U.S. —, 106 S.Ct. 113, 88 L.Ed.2d 92 (1985); *United States v. Pelusio*, 725 F.2d 161 (2d Cir.1983) (where police blocked a suspicious car, approached the car with guns drawn, and ordered the occupants out of the

vehicle, the police intrusion was reasonable under the circumstances as an investigative stop and not tantamount to an arrest); *United States v. White*, 648 F.2d 29 (D.C.Cir.) (drawn guns did not turn investigative stop into an arrest, since force was reasonably necessary under the circumstances), *cert. denied*, 454 U.S. 924, 102 S.Ct. 424, 70 L.Ed.2d 235 (1981). *Cf. United States v. Ceballos*, 654 F.2d 177 (2d Cir.1981) (blocking of the suspect's car and approaching the suspect's car with guns drawn was so intrusive that it constituted an arrest, where "the officers articulated no facts which they viewed as creating the need for the use of force" and the suspect "was not known to be armed or reasonably suspected of being armed").

intrusion and did not convert the stop into an arrest.[2]

■ Having found that both factors in the *Terry* stop inquiry are satisfied, we accordingly conclude that the officers effectuated a permissible investigative stop. As an incident to this permissible seizure, the officers were permitted to order the occupants out of the vehicle. The Supreme Court has held that in a *Terry* stop situation, "officers may, consistent with the Fourth Amendment ... require a driver who commits a traffic violation to exit the vehicle even though they lack any particularized reason for believing the driver possesses a weapon." *New York v. Class,* —— U.S. ——, 106 S.Ct. 960, 967, 89 L.Ed.2d 81 (1986). *See also Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). If so, then officers certainly may also order occupants out of a car when they have a particularized suspicion that the occupants are armed. *See United States v. Pelusio,* 725 F.2d 161, 166 (2d Cir.1983).

■ The officers were also permitted to search the driver of the car, Hardnett, and the car itself as part of the investigative stop. Police officers are entitled to take steps to ensure that a person stopped is not armed. *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). They are also entitled to search the passenger compartment of an automobile if specific and articulable facts "reasonably warrant the officer[s] in believing that the suspect [who was in the car] is dangerous and the suspect may gain immediate control of weapons." *Michigan v. Long,* 463 U.S. 1032, 1049, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983). Specific and articulable facts existed in this case which reasonably warranted such a belief in the officers. It was during the officers' legitimate search of the car and frisk of Hardnett that they found the guns. Thus, the guns were obtained as the result of a constitutional search. The district court therefore properly denied Hardnett's motion to suppress the guns as evidence in his trial.

Having found Hardnett's only claim on appeal to be unpersuasive, we accordingly AFFIRM his conviction.

---

**2.** In finding that the officers' conduct was reasonable under the circumstances and not tantamount to an arrest, we are ruling in a manner consistent with the approaches taken in what apparently are the only analogous cases previously presented to this court. In *United States v. Hemphill,* 767 F.2d 922 (6th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 388, 88 L.Ed.2d 340 (1985), police officers stopped two moving vehicles, approached the vehicles with guns drawn, ordered the occupants to exit the vehicles and lie face-down on the ground, and handcuffed the occupants. In an unpublished decision, we found this conduct to be reasonable under the circumstances and not tantamount to an arrest, stressing that the officers had received word that the occupants of one of the vehicles were armed and dangerous. In *United States v. Whitlock,* 418 F.Supp. 138 (E.D. Mich.1976), federal agents blocked the defendant's car from moving, apprehended him at gunpoint, handcuffed him, searched him, and confiscated his billfold and car keys. The agents had no knowledge, however, that the defendant was violent or dangerous. Finding that the agents' conduct was unduly intrusive under the circumstances, the district court held that the defendant's detention was an arrest, rather than an investigative stop. We affirmed without opinion. *United States v. Whitlock,* 556 F.2d 583 (6th Cir.1977).

Even though *Hemphill* and *Whitlock* reached opposite conclusions, they are not inconsistent because the law enforcement officials in each case were operating under different circumstances and with different information. Both cases are likewise consistent with our present analysis and conclusion in light of the circumstances under which Hardnett's seizure took place. The present case is analogous to *Hemphill* in that the police officers had reason to believe that the occupants of the car were armed and dangerous; the case is reconcilable with *Whitlock* for the same reason.