110 F.3d 65
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Marvel L. SALVANT, Defendant-Appellant.
 No. 96-6167.
 United States Court of Appeals, Sixth Circuit.
 March 28, 1997.
 
 Before: JONES, SUHRHEINRICH and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant Marvel Salvant entered a conditional plea of guilty to one count of possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). He now challenges the district court's denial of his motion to suppress. We AFFIRM.
 
 I.
 
 2
 While conducting a routine patrol on the evening of December 12, 1994, in an area known for drug trafficking, officers Kevin Perry and J.W. Poindexter of the Memphis Police Department saw an individual pass a large white bag to another man. The second individual then put the bag down his pants. When Perry got out of the car, the men ran.
 
 
 3
 Defendant fled across an open field and was eventually found lying under a house. The officers pulled defendant out from underneath the house, handcuffed him, and brought him back out to the street.
 
 
 4
 At the suppression hearing, Perry testified that once on the street he patted defendant down. Perry felt in defendant's right front pocket "a large bulge, there were some rocks in some type of bag," which he thought was crack cocaine. Perry also felt a large bulge in defendant's groin area. Perry then reached into defendant's right pocket and pulled out a white rock. It later turned out to be crack cocaine. Defendant testified that he got scared and ran when he saw the officers' spotlights. Defendant claimed that he was pulled out from underneath the house, handcuffed, and taken to a police car, without being asked any questions or being frisked. He maintained that the officers never bothered to frisk his jacket, but went straight for his groin area.
 
 II.
 
 5
 Defendant asserts that the investigatory stop exceeded the bounds of Terry v. Ohio, 392 U.S. 1 (1968), and crossed the line into an unlawful arrest. There is no bright-line test for determining when an investigative stop becomes an arrest. United States v. Sharpe, 470 U.S. 675, 685 (1985); United States v. Hatfield, 815 F.2d 1068, 1070 (6th Cir.1987). Rather, the test is one of reasonableness, which is determined by two factors:
 
 
 6
 (1) whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to a reasonable suspicion; and (2) whether the degree of intrusion into the suspect's personal security was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances.
 
 
 7
 United States v. Hardnett, 804 F.2d 353, 356 (6th Cir.1986) (citing Terry, 392 U.S. at 19-20).
 
 
 8
 Defendant concedes that the officers had a "reasonable and articulable suspicion" for conducting a Terry stop based on defendant's flight from the scene where he first saw Officer Perry. See United States v. Lane, 909 F.2d 895, 899 (6th Cir.1990); United States v. Pope, 561 F.2d 663, 668-69 (6th Cir.1977). Furthermore, the officers had received complaints of drug dealing in the area, and Officer Perry had previously made drug arrests in the neighborhood. United States v. Hughes, 898 F.2d 63, 64 (6th Cir.1990) (holding that presence of suspect in neighborhood known for drug trafficking and suspect's flight after being confronted by police are factors to be considered in totality of circumstances for probable cause); Lane, 909 F.2d at 898-99 (same).
 
 
 9
 Notwithstanding, defendant claims that the investigatory detention crossed the line into an illegal arrest when the officers pulled defendant out from underneath the house, handcuffed him, and moved him to the street. Neither movement, see United States v. Pino, 855 F.2d 357, 362 (6th Cir.1988), amended on other grounds, 866 F.2d 147 (6th Cir.1989) (holding that movement of defendant from side of vehicle to interstate underpass did not result in a "more institutional setting" so as to become an arrest); see generally Florida v. Royer, 460 U.S. 491, 504 (1983) ("there are undoubtedly reasons of safety and security that would justify moving a suspect from one location to another during an investigatory detention"); nor handcuffing, see, e.g., United States v. Smith, 3 F.3d 1088, 1094-95 (7th Cir.1993) (refusing to hold that handcuffing suspect without probable cause to arrest is unlawful per se); United States v. Sanders, 994 F.2d 200, 206 (5th Cir.1993) (same); will necessarily convert a stop into an arrest. See generally Hardnett, 804 F.2d at 357 (holding that use or display of force will not necessarily convert a stop into an arrest). We find that the officers' conduct was reasonable given the situation presented. Officer Perry testified that they retrieved defendant from a confined area, with limited lighting, and that they felt it was not safe. Complaints had been made about drug trafficking in the area. The officers' suspected that defendant was carrying drugs, after having observed defendant stuffing a bag down his pants. Defendant had fled when he spotted the officers. Finally, defendant was not moved very far, from the house to a lit street. Under the totality of circumstances, we hold that the stop did not constitute an arrest.
 
 
 10
 Next, defendant claims that the investigating officer lacked any reasonable, individualized suspicion to believe that the defendant was armed and presently dangerous when he conducted the investigative stop, and therefore had no justification for conducting a protective frisk of defendant's person for weapons.
 
 
 11
 A frisk for weapons must be supported by a reasonable belief that a suspect is armed and presently dangerous. Ybarra v. Illinois, 444 U.S. 85, 92-93 (1979); Terry, 392 U.S. at 24.
 
 
 12
 The patdown of defendant was reasonable. Defendant was present in a high-crime area known for drug dealing; defendant was observed placing a bag in his pants; defendant fled when he saw the officers; defendant was found hiding under a house. On these facts, a reasonable and prudent officer could have believed that defendant might be armed and dangerous. See Terry, 392 U.S. at 27 (stating that proper focus is whether investigating officer could point to any facts which would justify "a reasonably prudent [officer under] the circumstances" in believing "that his safety or that of others was in danger").
 
 
 13
 Third, defendant claims that the frisk of his person exceeded the permissible bounds of Terry and Minnesota v. Dickerson, 508 U.S. 366 (1993), because the contents of defendant's pocket could not have been immediately apparent to the investigating officer. He therefore claims that the evidence must be suppressed. Sibron v. New York, 392 U.S. 40, 65-66 (1968).
 
 
 14
 The Supreme Court recognized a plain touch corollary to the plain view doctrine in Dickerson. That is, an officer may seize contraband detected during a protective patdown search authorized by Terry if the object's identity is "immediately apparent" to the officer's touch. Dickerson, 508 U.S. at 375.
 
 
 15
 Upon review of Officer Perry's testimony, both direct and cross, which the district court credited, we find that Perry did not conduct the same degree of manipulation as the officer in Dickerson employed. That is, from Perry's testimony it appears that he instantly recognized the substance as crack cocaine, based on his extensive experience with it. See United States v. Ashley, 37 F.3d 678, 680 (D.C.Cir.1994) (distinguishing Dickerson on grounds that district court made factual finding that experienced officer knew immediately that object was crack cocaine based solely on the "sweeping, patting, probing motion", not manipulation); United States v. Craft, 30 F.3d 1044, 1045 (8th Cir.1994) (upholding seizure of packages taped to defendant's legs where officer, based on seven years of experience as a drug enforcement officer at the airport, knew immediately that hard, compact bulges on defendant's ankles were packages of controlled substances); United States v. Hughes, 15 F.3d 798, 802 (8th Cir.1994) (upholding search where officer testified that his first impression was crack cocaine; thus there was no further manipulation of the object). Cf. Dickerson, 508 U.S. at 378 (holding that patdown exceeded Terry because officer determined that lump was contraband only after "squeezing, sliding and otherwise manipulating the contents of the defendant's pocket"); United States v. Gibson, 19 F.3d 1449, 1451 (D.C.Cir.1994) (holding that where there was no indication that object was weapon and "flat angular object [did] not correspond with rocklike crack cocaine, or the twigs and leaves of marijuana, or capsules containing prescription drugs," seizure was illegal); United States v. Ponce, 8 F.3d 989, 999 (5th Cir.1993) (holding that officer's speculation that "little bump" might be folded dollar bills containing razor blade was not sufficient to allow officer to remove contents of watch pocket).
 
 
 16
 AFFIRMED.