JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Charles Nickelberry ("Nickelberry") appeals from the judgment of the Cuyahoga County Court of Common Pleas in case number CR-440779. For the reasons adduced below, we affirm.
 {¶ 2} The following facts give rise to this appeal. On May 30, 2003, Detective Robert Glover and Officer Christopher Gibbons were conducting a prostitution detail in the area of Euclid Avenue and Green Road. The officers completed their assignment around 1:10 a.m. and began to proceed back to the Sixth District Cleveland Police Department. As Detective Glover was driving his unmarked police car westbound on Euclid Avenue, crossing Cliffview, he observed a white car run a red light. The car was driven by a black male later identified as Nickelberry.
 {¶ 3} Detective Glover had to slam on his brakes to avoid having Nickelberry's car crash into his vehicle. Detective Glover testified that he and Nickelberry both stopped their cars. When Detective Glover exited his vehicle to approach Nickelberry's car, Nickelberry drove off at a high rate of speed. Detective Glover also testified that it was a busy intersection with traffic in both directions, and that there were pedestrians across the street on Euclid Avenue.
 {¶ 4} Detective Glover activated his siren and began to chase Nickelberry's car. Nickelberry continued to speed down Euclid and turned on Green Road before finally pulling over. After Nickelberry stopped his car, Detective Glover observed Nickelberry reaching down for something and making furtive movements in his car.
 {¶ 5} Detective Glover instructed Nickelberry to put his hands out the window, but Nickelberry refused and kept reaching for something in the car. Detective Glover testified that Nickelberry would not comply with orders and kept reaching down toward the seat. Concerned for his safety, Detective Glover pulled his gun and kept yelling at Nickelberry to put his hands out the window, but Nickelberry refused.
 {¶ 6} When other units arrived, the officers pulled out guns and surrounded Nickelberry's car. There was a total of four officers with their guns drawn. Nickelberry continued reaching in his car. Officer Gibbons approached the car to effect the traffic stop and ordered Nickelberry to put his hands up. Nickelberry did not comply and kept reaching in his car. Ultimately, Officer Gibbons opened the car door and ordered Nickelberry to come out. Nickelberry turned toward Officer Gibbons. Officer Gibbons testified he observed that Nickelberry had impaired coordination, slurred speech and an odor of alcohol. It was later determined that Nickelberry was disabled and had a speech impediment due to a stroke.
 {¶ 7} After removing Nickelberry from the car, Officer Gibbons began a pat-down search for safety. Officer Gibbons testified that although there were no objects in Nickelberry's hands, there could have been weapons in Nickelberry's pockets or under the seat. During the pat-down search, Officer Gibbons did not feel a gun or a knife. However, he did notice the unmistakable feel of rocks of crack cocaine in Nickelberry's front pants pocket. Officer Gibbons testified he had no doubt that it was crack cocaine. There were 44 rocks, which Officer Gibbons stated was a handful and large enough to determine what it was. After completing the pat-down search, Officer Gibbons reached into Nickelberry's pocket and retrieved a bag of drugs.
 {¶ 8} Nickelberry was arrested for violating state drug laws and was issued a traffic citation. He had a valid driver's license and insurance. No weapons were found on him or in his car.
 {¶ 9} On August 6, 2003, Nickelberry was indicted for possession of drugs, drug trafficking, failure to comply with an order or signal of a police officer with a specification, and possession of criminal tools. He filed a motion to suppress, which the trial court denied. Thereafter, he pled no contest. The trial court proceeded to find him guilty of all charges and sentenced him to a total of three years of imprisonment.
 {¶ 10} Nickelberry has appealed the judgment of the trial court, raising two assignments of error for our review. Nickelberry's first assignment of error provides:
 {¶ 11} "I. Defendant was denied due process of law when the court overruled his motion to suppress."
 {¶ 12} Our review of the trial court's decision to deny the motion to suppress is de novo. The Supreme Court of Ohio held inState v. Burnside, 100 Ohio St.3d 152, 154, 2003-Ohio-5372, as follows:
{¶ 13} "Appellate review of a motion to suppress presents amixed question of law and fact. When considering a motion tosuppress, the trial court assumes the role of trier of fact andis therefore in the best position to resolve factual questionsand evaluate the credibility of witnesses. Consequently, anappellate court must accept the trial court's findings of fact ifthey are supported by competent, credible evidence.
 {¶ 14} "Accepting these facts as true, the appellate courtmust then independently determine, without deference to theconclusion of the trial court, whether the facts satisfy theapplicable legal standard."
 {¶ 15} (Internal citations omitted.)
 {¶ 16} Nickelberry argues that the court should have granted his motion to suppress because he was arrested for traffic violations that are non-arrestable offenses for which the law does not authorize a full custodial search. Within his argument, Nickelberry challenges the stop, the search, and his arrest.
 {¶ 17} We first consider the stop. Under application ofTerry v. Ohio (1968), 392 U.S. 1, a law enforcement officer must have a reasonable suspicion, based on specific and articulable facts, that a motorist is or has been engaged in criminal activity before stopping a vehicle. State v.Davenport, Cuyahoga App. No. 83487, 2004-Ohio-5020. An officer is justified in making an investigative stop if the specific and articulable facts available to an officer indicate that a motorist may be committing a criminal act, which includes the violation of a traffic law. Id.
 {¶ 18} The facts of this case establish that Nickelberry was stopped because he ran a red light and failed to pull over. Since Detective Glover observed Nickelberry commit a traffic violation, the stop was valid.
 {¶ 19} We next evaluate at what point Nickelberry was under arrest. Nickelberry claims that the actions of the police in pulling him out of the vehicle with guns drawn subjected him to a full custodial arrest. We do not agree. While the use or display of force may be highly intrusive and under certain circumstances tantamount to an arrest, the mere use or display of force in making an investigatory stop will not necessarily convert the stop into an arrest. See State v. Gaston (1996),110 Ohio App.3d 835, 842-843; United States v. Hardnett, 804 F.2d 353,357 (6th Cir. 1986), cert. denied, 479 U.S. 1097 (1987). Courts have generally upheld investigative stops made at gunpoint where the display of arms is viewed as reasonably necessary for the protection of the officers. Hardnett, 804 F.2d 353 at 357. Thus, where the surrounding circumstances give rise to a justifiable fear for personal safety, a seizure effectuated with weapons drawn may properly be considered an investigative stop. Id.
 {¶ 20} Applying the foregoing standards to this case, we conclude the facts support a finding that the officers had a justifiable fear for their safety. The facts show that Nickelberry failed to stop after running a red light, took off at a high rate of speed, would not comply with orders to put his hands out the window, and kept reaching down under the seat in his car. The officers testified they feared Nickelberry might have been reaching for a weapon, and they pulled their weapons out of concern for their safety. Under these circumstances, the display of arms was reasonably necessary for the protection of the officers and did not convert the investigatory stop into an arrest.
 {¶ 21} Since Nickelberry was stopped for traffic violations, Officer Gibbons was free to remove Nickelberry from his vehicle even in the absence of a reasonable suspicion of criminal activity. State v. Hoskins, Cuyahoga App. No. 80384, 2002-Ohio-2451, citing Pennsylvania v. Mimms (1977),434 U.S. 106. Upon removing Nickelberry from his car, Officer Gibbons conducted a pat-down search for safety. Nickelberry argues the search exceeded any permissive limits authorized by Terry v.Ohio (1960), 391 U.S. 1.
 {¶ 22} Terry permits a limited protective search of a detainee's person for concealed weapons provided the officer has reasonable suspicion that his safety, or the safety of others, is in danger. Garfield Hts. Metro. Park Dist. v. Skerl (1999),135 Ohio App.3d 586, 592. The proper inquiry is whether the officer reasonably determines that the detainee is armed and presently dangerous to the officer or others. Hoskins, supra. Reasonable suspicion must be supported by specific and articulable facts and circumstances which, together with any rational inferences that may be drawn therefrom, reasonably support a conclusion that the detainee is armed and dangerous. State v. Stewart, Montgomery App. No. 19961, 2004-Ohio-1319. {¶ 23} We have already determined that under the facts and circumstances in this case the officers had a reasonable concern for their safety. The officers had observed Nickelberry reaching down for something in his car. Nickelberry also repeatedly refused to show his hands upon demands of the officers and continued reaching in his car. While Nickelberry did not have any objects in his hands when he was removed from the vehicle, the officers had a reasonable suspicion that Nickelberry may have had a weapon on his person based upon the furtive movements made in the car. See State v.Harden, Montgomery App. No. 19880, 2004-Ohio-664 (finding pat-down was justified where defendant made movement towards the floor board during a traffic stop). Accordingly, we hold the pat-down search was lawful.
 {¶ 24} Next, we must consider whether Officer Gibbons exceeded the scope of a Terry patdown search when he discovered crack cocaine on Nickelberry's person. In Minnesota v.Dickerson (1993), 508 U.S. 366, the U.S. Supreme Court expanded the scope of a Terry search to allow a seizure of contraband if the officer "feels an object whose contour or mass makes its identity immediately apparent." Id. at 375.
 {¶ 25} In the instant case, Officer Gibbons conducted a pat-down search for safety. During the pat-down search he felt an object in Nickelberry's pocket, which he had no doubt was crack cocaine. Gibbons testified that the object he felt was a handful and large enough for him to determine what it was. He testified that it had the unmistakable feel of crack cocaine. He further stated that from his experience of doing many drug arrests he knew the texture of crack cocaine in its hard rock form and the feeling of rocks in a bag. Under these facts, we hold that the pat-down search and seizure of the crack cocaine did not violate the Fourth Amendment protection against illegal search and seizure.
 {¶ 26} Nickelberry's first assignment of error is overruled.
 {¶ 27} Nickelberry's second assignment of error provides:
 {¶ 28} "II. Defendant was denied due process of law when the court found him guilty of a specification on the failure to comply count of the indictment."
 {¶ 29} Under this assignment of error, Nickelberry challenges the specification which provided that his operation of the motor vehicle caused a substantial risk of serious physical harm to persons or property, and thereby increased the offense of failure to comply under R.C. 2921.331 to a third-degree felony. Nickelberry argues the state failed to present proof to support the specification.
 {¶ 30} R.C. 2921.331(B) provides: "No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." This offense, if committed by an adult, is usually punishable as a misdemeanor of the first degree. R.C. 2921.331(C)(4). If the state establishes that a defendant was fleeing a police officer in an automobile and the defendant operates that automobile in such a way as to present a substantial risk of serious physical harm to persons or property, the offense is punishable as a felony of the third degree. R.C. 2921.331(C)(5)(a)(ii).
 {¶ 31} Our review of the testimony in this case reflects that after Nickelberry ran a red light, he proceeded to elude the police and drive down Euclid Avenue at a high rate of speed, despite being signaled to stop by Officer Glover with an overhead light and siren. The intersection from which Nickelberry proceeded was busy; there were people across the street; Nickelberry was speeding past other vehicles during the chase; and Nickelberry made a quick turn onto Green Road without first stopping at the light. Upon these facts, we find the state proved Nickelberry presented a substantial risk of serious physical harm to persons or property when he was attempting to elude the police.
 {¶ 32} Nickelberry's second assignment of error is overruled. Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, P.J., and Cooney, J., concur.