[Cite as *State v. Wishon*, 2023-Ohio-1915.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 29664 |
| | : | |
| v. | : | Trial Court Case No. 2021 CR 03252 |
| | : | |
| JEFFERY LEE WISHON | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on June 9, 2023

. . . . . . . . . . .

MATHIAS H. HECK, JR., by RICKY L. MURRAY, Attorney for Appellee

MICHAEL MILLS, Attorney for Appellant

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-Appellant Jeffery Lee Wishon appeals from his conviction in the Montgomery County Common Pleas Court following his no contest plea to one count of having weapons while under disability. The sole issue Wishon raises on appeal is the trial court's denial of his motion to suppress. For the following reasons, we affirm the

judgment of the trial court.

## I. Facts and Procedural History

{¶ 2} On December 13, 2021, Wishon was indicted by a Montgomery County grand jury on one count of having weapons while under disability (prior drug conviction), in violation of R.C. 2923.13(A)(3), a felony of the third degree; and one count of carrying concealed weapons (loaded/ready at hand), in violation of R.C. 2923.12(A)(2), a felony of the fourth degree.

{¶ 3} On January 27, 2022, Wishon filed a motion to suppress, which alleged that he had been unlawfully searched and seized and that any evidence found as a result of the search should be suppressed. He further alleged that any statements he made should be suppressed because his *Miranda* rights were violated and because he invoked his right to counsel.

{¶ 4} A hearing was held on March 4, 2022, at which Sergeant Todd Stanley testified on behalf of the State. Sergeant Stanley was a 24-year veteran of the Butler Township Police Department and had over 27 years of law enforcement experience. On the afternoon of September 23, 2021, Sergeant Stanley and Officer Jackson, also of the Butler Township Police Department, were dispatched to Walmart in Butler Township, Ohio, on a report of individuals shoplifting. Both officers were wearing police uniforms and drove marked police cruisers. Their body cameras were activated and submitted at the hearing as State's Exhibit 1.

{¶ 5} At the outset, the officers were told that there were three people inside the Walmart that loss prevention officers suspected may be shoplifting: a black male, a white

female, and a white male; these individuals were later identified as Emmanuel Gray, Jr., Nicole VanDyke, and Wishon, respectively. Loss prevention officers relayed to the Butler Township police officers that Gray and VanDyke had been observed concealing merchandise and price-swapping items at the self-checkout lane. Wishon had not been seen taking any items but had followed VanDyke around the store. VanDyke obtained men's and women's toiletries while in the store. According to the loss prevention officers, they did not feel they had enough evidence to say Wishon was concealing merchandise; they did not believe that he was not part of it, but he had not been observed concealing anything.

{¶ 6} Gray was the first to exit the store; he was detained immediately after getting outside the store and was taken back inside to the loss prevention office. Shortly thereafter, VanDyke and Wishon walked out of the store together; VanDyke was stopped but Wishon was told by Sergeant Stanley "you go because you're not part of it, I know you are, but you're not." Wishon continued on his way through the parking lot while Sergeant Stanley spoke with VanDyke. VanDyke informed Sergeant Stanley that she was staying at Sober Living, which was a drug/alcohol counseling group located at two local motels approximately one eighth of a mile from the Walmart. According to Sergeant Stanley's statements later recorded on his body camera, he believed VanDyke was under the influence of something based on their interaction.

{¶ 7} Meanwhile, Officer Jackson was informed by Gray that Wishon had Gray's gun on his person. Gray explained that he had had Wishon hold his gun for him before leaving the store. Officer Jackson immediately radioed to Sergeant Stanley that Wishon

"potentially" had a firearm on him. Sergeant Stanley testified that he did not hear the word "potentially" and that he understood the transmission to say that Wishon did have a gun. In response, Sergeant Stanley got into his police cruiser and started driving around the parking lot looking for Wishon. At the same time, Officer Jackson was inside the loss prevention office watching Wishon on the security screens and providing a description of Wishon's clothing and the direction he was heading over the radio.

{¶ 8} Sergeant Stanley located Wishon near the back of the parking lot near Hooters. As Sergeant Stanley pulled up, he called out of his window to Wishon, "hey, I do want to speak to you for a minute, ok?" Sergeant Stanley then asked Wishon to "do me a favor and put your hands on top of the car." As Sergeant Stanley was getting out of the cruiser, he saw a weight in Wishon's pocket and saw the butt of the handle of a gun. At that point, Sergeant Stanley pulled his gun out, putting it in a low ready position, and told Wishon not to move. Sergeant Stanley held Wishon at gun point until Lieutenant Chris Guthrie arrived less than a minute later. Wishon was then handcuffed, and the weapon was removed from his pocket. Wishon was asked if he had a CCW (meaning, a license to carry a concealed weapon), which he denied. Wishon was also asked why he had a gun on him, and he indicated that he was holding it for his friend. Wishon was placed in the back of the cruiser and the gun was found to be loaded. Officers also learned that Wishon had a prior felony drug conviction and was, therefore, under a weapons disability.

{¶ 9} Sergeant Stanley testified that any time a gun is involved, there is an issue of officer safety. Stanley himself had previously been involved in two officer-involved

shootings, in one of which the suspect was killed. Prior to stopping Wishon, Stanley did not know who Wishon was or anything about his past; Stanley also did not know if Wishon had a CCW permit prior to their interaction.

{¶ 10} On June 8, 2022, the trial court overruled Wishon's motion to suppress in its entirety. Wishon subsequently entered a negotiated plea wherein he agreed to plead no contest to the charge of having a weapon while under disability, and the State agreed to dismiss the remaining charge. On December 1, 2022, Wishon was sentenced to community control sanctions.

## II. Assignment of Error

{¶ 11} Wishon timely appealed and raises the following single assignment of error:

THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S

MOTION TO SUPPRESS THE APPELLANT'S STOP AND ARREST.

{¶ 12} Wishon contends that he was unlawfully stopped and detained under circumstances tantamount to an arrest without probable cause. Although Wishon challenged the admissibility of his statements in the trial court, he does not challenge that portion of his motion to suppress on appeal. Therefore, we will contain our analysis to the lawfulness of Wishon's detention.

### a. Standard of Review

{¶ 13} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "The reviewing court must accept the trial court's findings of fact if they are supported by competent, credible evidence, and the court reviews the trial court's legal conclusions de

novo." *State v. LaRosa*, 165 Ohio St.3d 346, 2021-Ohio-4060, 179 N.E.3d 89, ¶ 17, citing *Burnside* at ¶ 8.

### b. Applicable Fourth Amendment Law

{¶ 14} "The Fourth Amendment to the United States Constitution, and Section 14, Article I of the Ohio Constitution, protect individuals from unreasonable searches and seizures conducted by police officers." (Citations omitted.) *State v. Ferguson*, 2d Dist. Montgomery No. 28644, 2020-Ohio-4153, ¶ 12. "The ultimate standard set forth in the Fourth Amendment is reasonableness." *Cady v. Dombrowski*, 413 U.S. 433, 439, 93 S. Ct. 2523, 37 L.Ed.2d 706 (1973). "Thus, the Fourth Amendment protects citizens from only *unreasonable* government searches and seizures." (Emphasis sic.) *State v. Dunn*, 131 Ohio St.3d 325, 2012-Ohio-1008, 964 N.E.2d 1037, ¶ 17, citing *United States v. Sharpe*, 470 U.S. 675, 682, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).

{¶ 15} The Fourth Amendment, however, is not implicated every time a police officer has contact with a citizen. *State v. Taylor*, 106 Ohio App.3d 741, 747, 667 N.E.2d 60 (2d Dist.1995), citing *California v. Hodari D.*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). "The law recognizes three types of police-citizen interactions: 1) a consensual encounter, 2) a brief investigatory stop or detention, and 3) an arrest." *State v. Millerton*, 2015-Ohio-34, 26 N.E.3d 317, ¶ 20 (2d Dist.), citing *State v. Jones*, 188 Ohio App.3d 628, 2010-Ohio-2854, 936 N.E.2d 529, ¶ 13 (10th Dist.).

{¶ 16} "Consensual encounters are not seizures, and Fourth Amendment guarantees are not implicated in such encounters." (Citations omitted.) *State v. Keister*, 2d Dist. Montgomery No. 29081, 2022-Ohio-856, ¶ 27. "Consensual encounters occur

when the police merely approach a person in a public place and engage the person in conversation, and the person remains free not to answer and to walk away." *State v. Lewis*, 2d Dist. Montgomery No. 22726, 2009-Ohio-158, ¶ 21, citing *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

{¶ 17} The second type of encounter is an investigatory detention, often referred to as a "*Terry* stop," which is more intrusive than a consensual encounter but less intrusive than a formal custodial arrest. *Taylor* at 748. "Unlike consensual encounters, an investigatory detention constitutes a seizure; therefore, Fourth Amendment protections are implicated in an investigatory detention." (Citations omitted.) *State v. Shern*, 2018-Ohio-5000, 126 N.E.3d 322, ¶ 13 (2d Dist.). "An individual is subject to an investigatory detention when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority, a reasonable person would have believed that he was not free to leave or is compelled to respond to questions." *Lewis* at ¶ 22, citing *Mendenhall* at 553 and *Terry v. Ohio*, 392 U.S. 1, 16, 19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). During investigatory detentions, "police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot[.]" (Citations omitted.) *State v. Swift*, 2d Dist. Montgomery No. 27036, 2016-Ohio-8191, ¶ 10. Therefore, an investigatory detention "does not violate the Fourth Amendment as long as the police have a reasonable, articulable suspicion of criminal activity." *State v. Ramey*, 2d Dist. Montgomery No. 26705, 2016-Ohio-607, ¶ 22, citing *Taylor* at 748-749, citing *Terry* at 21.

{¶ 18} "The determination whether an officer had reasonable suspicion to conduct a *Terry* stop must be based on the totality of circumstances 'viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.' " *State v. Hairston*, 156 Ohio St.3d 363, 2019-Ohio-1622,126 N.E.3d 1132, ¶ 10, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991). "An assessment of the totality of the circumstances 'does not deal with hard certainties, but with probabilities.' " *Id.*, quoting *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). "Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." (Citations omitted.) *Kansas v. Glover*, __ U.S. __, 140 S.Ct. 1183, 1187, 206 L.Ed.2d 412 (2020). Furthermore, "[a] determination that reasonable suspicion exists * * * need not rule out the possibility of innocent conduct." *United States v. Arvizu*, 534 U.S. 266, 277, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). "In permitting detentions based on reasonable suspicion, '*Terry* accepts the risk that officers may stop innocent people.' " *State v. Hawkins*, 158 Ohio St.3d 94, 2019-Ohio-4210, 140 N.E.3d 577, ¶ 22, quoting *Illinois v. Wardlow*, 528 U.S. 119, 126, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000).

{¶ 19} The final category of police encounters is a seizure that is the equivalent of an arrest, which is constitutionally permissible "only if the police have probable cause to arrest a person for a crime." *State v. Retherford*, 93 Ohio App.3d 586, 595, 639 N.E.2d 498 (2d Dist.1994), citing *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229

(1983). "A seizure is equivalent to an arrest when (1) there is an intent to arrest; (2) the seizure is made under real or pretended authority; (3) it is accompanied by an actual or constructive seizure or detention; and (4) it is so understood by the person arrested." *Taylor* at 749. "Probable cause to arrest exists when a reasonably prudent person would believe that the person to be arrested has committed a crime." *State v. Adams*, 2d Dist. Montgomery No. 24184, 2011-Ohio-4008, ¶ 7, citing *State v. Timson*, 38 Ohio St.2d 122, 311 N.E.2d 16 (1974). "A warrantless arrest that is based upon probable cause and occurs in a public place does not violate the Fourth Amendment." *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 66.

{¶ 20} "Whether a law enforcement officer possessed probable cause or reasonable suspicion to detain an individual must be examined in light of the totality of the circumstances viewed from the standpoint of an objectively reasonable police officer." (Citations omitted.) *State v. Thornton*, 2d Dist. Montgomery No. 29653, 2023-Ohio-1404, ¶ 20. "Under this analysis, 'both the content of information possessed by police and its degree of reliability' are relevant to the court's determination." *City of Maumee v. Weisner*, 87 Ohio St.3d 295, 299, 720 N.E.2d 507 (1999), quoting *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). Generally, this requires a showing that the officer making the stop or arrest was personally aware of sufficient facts to justify it. *State v. Pickett*, 2017-Ohio-5830, 94 N.E.3d 1046, ¶ 9 (2d Dist.), quoting *Weisner* at 297.

{¶ 21} The collective knowledge doctrine, however, "permits police officers to rely on information provided to them by other officers in helping to establish probable cause

or reasonable suspicion." (Citations omitted.) *State v. Jones*, 2d Dist. Montgomery No. 23926, 2011-Ohio-1984, ¶ 20. " 'Reasonable suspicion [or probable cause] may exist based upon the collective knowledge of the police when there is reliable communication between the officer supplying the information and the officer acting on that information.' " *State v. Freeman*, 9th Dist. Summit No. 27617, 2015-Ohio-2501, ¶ 16, quoting *State v. Mook*, 9th Dist. Wayne No. 97CA0069, 1998 WL 417461, *3 (July 15, 1998).

### c. Analysis

{¶ 22} There is no dispute that the contact between Wishon and Sergeant Stanley was not a consensual encounter. The question then is whether the initial contact constituted a *Terry* stop, which requires only reasonable articulable suspicion, or an arrest, which requires probable cause. Wishon contends that the level of force used at the time of his detention was the equivalent of an arrest requiring the officers to have probable cause to arrest him. He further contends that there was no evidence prior to the stop that he was doing anything unlawful for the officers to have either reasonable grounds to detain him or probable cause to arrest him.

{¶ 23} The State responds that Sergeant Stanley had reasonable articulable suspicion to detain Wishon based on the totality of the circumstances. The State suggests that the level of force used by Sergeant Stanley did not transform the detention into an arrest as Wishon was not arrested until after Sergeant Stanley verified that Wishon did not have a CCW permit.

{¶ 24} Considering the totality of the circumstances in this case, we conclude that Sergeant Stanley had reasonable articulable suspicion to detain Wishon and that the

show of force used by Sergeant Stanley was reasonable under the circumstances so as not to convert the initial stop into an arrest.

{¶ 25} At the time Wishon was detained, Sergeant Stanley was aware that Wishon had been with two companions who were found shoplifting in Walmart. Although Wishon was not personally observed stealing items, his association with the shoplifters was a relevant consideration. It was also known that VanDyke was obtaining drug and/or alcohol treatment nearby and appeared to be under the influence during her interactions with Sergeant Stanley. More importantly, Gray advised Officer Jackson that he had provided his gun to Wishon and indicated that Wishon still physically possessed the gun while walking away in the parking lot. Gray's identity was known to the officers, and he had just been with Wishon, an individual with whom he was familiar, such that Gray's information was sufficiently reliable for the officers to have reasonably relied upon it.

{¶ 26} Upon Sergeant Stanley's initial observance of Wishon, he did not see a gun on Wishon's person, meaning that it was concealed. Wishon did not advise Sergeant Stanley that he had a permit to carry a concealed weapon, which the law required him to do if he indeed had a valid permit. R.C. 2923.12(B)(1). As the trial court noted, at the time this offense occurred, under Ohio law, only certain individuals could carry concealed weapons. R.C. 2923.12. Although that limitation changed as of June 13, 2022, with the enactment of Senate Bill 215, generally, the determination of reasonable articulable suspicion is governed by the applicable law at the time the offense occurred. Therefore, unless Wishon had a valid CCW permit, he was not permitted to carry a concealed firearm on his person. Additionally, the fact that Wishon was with individuals who had been

committing thefts, at least one of whom was under the influence, and that he was alleged to be holding Gray's gun would lead a reasonable officer to temporarily detain Wishon to investigate further.

{¶ 27} When he initially stopped Wishon, Sergeant Stanley informed Wishon that he wanted to talk to him and asked Wishon to put his hands on the car. Believing that Wishon had a gun on his person, ordering Wishon to put his hands on the car was not unreasonable for officer safety and was minimally intrusive. Then, when Stanley saw that the gun was hanging out of Wishon's pocket, it confirmed that Wishon did indeed have a gun and that it had been concealed on Wishon's person. Although Stanley did not yet know whether Wishon had a valid CCW permit, based on the circumstances, he had a reasonable suspicion that Wishon might be carrying a concealed weapon illegally. *See State v. Taylor*, 8th Dist. Cuyahoga No. 92382, 2009-Ohio-5822, ¶ 8 (after observing a gun handle, the officer had a reasonable suspicion to believe that the defendant might be carrying a concealed weapon illegally); *State v. Vance*, 10th Dist. Franklin No. 92AP-1388, 1993 WL 85355, *1-2 (Mar. 18, 1993) (officers had reasonable articulable suspicion to stop suspect for carrying a concealed firearm who matched description of individual seen with a gun hidden in his waistband). The fact that Sergeant Stanley, who was by himself, pulled his gun out and kept it at the "low ready" until another officer could arrive also was not unreasonable. "Police officers may take steps that are 'reasonably necessary to protect their personal safety and to maintain the status quo during the course of [a] stop.' " *Hairston*, 156 Ohio St.3d 363, 2019-Ohio-1622, 126 N.E.3d 1132, at ¶ 21, quoting *United States v. Hensley*, 469 U.S. 221, 235, 105 S.Ct. 675, 83 L.Ed.2d 604

(1985). "The 'mere use or display of force in making a stop will not necessarily convert a stop into an arrest.' " *Id.*, quoting *United States v. Hardnett*, 804 F.2d 353, 357 (6th Cir.1986). "In fact, even a police officer's display of his weapon during an investigatory stop does not convert the stop into an arrest." *State v. Pickett*, 8th Dist. Cuyahoga No. 76295, 2000 WL 1060653, *5 (Aug. 3, 2000). "Whether an investigative stop is converted into an arrest depends on, first, whether the officers had reasonable suspicion to make the stop, and second, whether the degree of intrusion into the suspect's personal security was reasonably related to the officers' suspicions and the surrounding circumstances." *Hairston* at ¶ 21, citing *Hardnett* at 356, citing *Terry*, 392 U.S. at 19-20, 88 S.Ct. 1868, 20 L.Ed.2d 889.

{¶ 28} Sergeant Stanley had over 27 years of law enforcement experience and had previously been involved in two officer-involved shootings, including one in which the suspect died. Stanley was aware of the dangers of suspects with firearms, and he had personally observed a firearm sticking out of Wishon's pocket. The assisting officer, Lieutenant Guthrie, arrived less than a minute later, at which time Wishon was quickly placed in handcuffs and his gun was safely removed from his pocket. "Where a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others." *State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489 (1988), paragraph two of the syllabus. This is permitted in order for a police officer to take "steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him." *Terry* at

Observing a firearm on a suspect's person provides more than enough reasonable suspicion that the individual is armed in order to conduct a protective search for weapons.

**{¶ 29}** Upon the removal of the firearm, Sergeant Stanley immediately verified his suspicion that Wishon did not have a CCW permit and placed him under arrest. Stanley took no longer than was necessary to safely remove the firearm and verify his suspicions. Under these circumstances, we cannot say that Stanley's actions were unreasonable. Wishon's sole assignment of error is overruled.

### III. Conclusion

**{¶ 30}** Having overruled the assignment of error, we affirm the judgment of the trial court.

. . . . . . . . . . . . .

WELBAUM, P.J. and HUFFMAN, J., concur.