The STATE of Ohio, Appellant,

v.

McCAULLEY, Appellee.

[Cite as *State v. McCaulley,* 161 Ohio App.3d 568, 2005-Ohio-2864.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20817.

Decided June 10, 2005.

Nolan Thomas, Assistant Prosecuting Attorney, for appellant.

Jay B. Carter, for appellee.

---

WOLFF, Judge.

{¶ 1} The state appeals from a judgment of the Montgomery County Court of Common Pleas, which granted George L. McCaulley's motion to suppress evidence.

{¶ 2} The essential facts are undisputed and were set forth in the trial court's decision as follows:

{¶ 3} "On July 29, 2004, at approximately 9:40 a.m., Montgomery County Sheriff's Deputy Jay Vitali was on routine patrol on North Dixie Drive in Harrison Township. The deputy was in the parking lot of the Traveler's Motel

when he noticed a 2004 Dodge Stratus pull out of the lot. He could observe a bar code in the window of the vehicle that identified it as a rental car.

{¶ 4} "The deputy described the Traveler's Motel, specifically, and the area around it, generally, as a high crime area, especially for drug, prostitution, trespass, and similar offenses. The deputy was suspicious because of the nature of the area and the rental car, and therefore followed the vehicle as it proceeded northbound on North Dixie. The deputy testified that the defendant changed lanes without signaling for at least one hundred (100) feet before he changed lanes, in violation of R.C. 4511.39.

{¶ 5} "The deputy initiated a traffic stop and noticed an odor of an alcoholic beverage, bloodshot eyes, and profuse sweating on the part of the defendant. He obtained Mr. McCaulley's driver's license and the rental agreement (which did not list the defendant as an authorized driver), and asked him to step from the car. The defendant cooperated throughout his contacts with the officer. The defendant was patted down and placed in the rear seat of the cruiser while the officer ran Mr. McCaulley's license on the computer. The computer check determined that the defendant was driving under suspension.

{¶ 6} "The officer testified that, at a minimum, he was going to write the defendant a ticket, but he was not sure at that time if he [was] going to arrest him. The deputy stated the vehicle would have to be towed regardless, because the defendant did not have driving privileges.

{¶ 7} "Deputy Ball, an evidence technician, arrived at the scene to take photographs and, while incidentally looking back in Deputy Vitali's cruiser, noticed a large chunk of suspected crack cocaine on the driver's front seat near the crevice. Mr. McCaulley was removed from the back seat of the cruiser, notified that he was under arrest, and handcuffed."

{¶ 8} On October 6, 2004, McCaulley was indicted for possession of cocaine and possession of criminal tools. He pleaded not guilty and filed a motion to suppress evidence. After conducting a hearing on the motion, the trial court suppressed the evidence. The state raises one assignment of error on appeal.

{¶ 9} "The trial court erred in granting defendant's motion to suppress."

{¶ 10} The state contends that Officer Vitali acted reasonably in placing McCaulley in the rear of his cruiser for the purposes of protecting his personal safety and determining whether McCaulley was an authorized driver of the vehicle he had been driving. In the alternative, the state argues that even if the detention had been impermissible, the officer's error was harmless and did not warrant suppression of the evidence because the cocaine would have inevitably been discovered pursuant to a lawful investigation. In deciding to suppress the evidence, the trial court noted that the traffic stop was "quintessentially" pretextual, but that it was permissible pursuant to *Whren v. United States* (1996), 517

U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89, and *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 665 N.E.2d 1091. Thus, the court determined that the traffic stop was legal. The court further found that there was "no constitutional infirmity" with asking McCaulley to step from the car, citing *Pennsylvania v. Mimms* (1977), 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331. The trial court concluded, however, that there had been insufficient evidence of a dangerous condition during the traffic stop to justify placing McCaulley in the deputy's cruiser. In so holding, the trial court noted that no testimony had been presented that Deputy Vitali had feared for his safety or that he or McCaulley had been placed in any danger by McCaulley's position outside of his car. The trial court also noted that when McCaulley was placed in the cruiser, he had not been under investigation for driving under the influence or for any other offense except his failure to signal. The court also considered that the stop had been made during the day in a very public location. The court concluded: "The facts that [McCaulley] was coming from a motel where prostitution and drug activity are not uncommon and that he was driving a rental car, while perhaps legitimately raising the subjective and intuitive suspicions of an experienced law enforcement officer, do not constitutionally justify detaining the driver in the rear of the cruiser."

{¶ 11} As the trial court noted, it is well established that ordering a driver out of his or her car during a traffic stop is permissible because such a procedure promotes officer safety while inflicting a minimal intrusion into the driver's personal liberty. *Mimms,* 434 U.S. at 111, 98 S.Ct. 330, 54 L.Ed.2d 331. However, taking the additional step of placing a driver in a patrol car during a routine traffic stop—and the pat-down search that would normally precede such a step—increases the intrusive nature of the detention and must be justified by reasons beyond those that necessitated the traffic stop. *State v. Lozada* (2001), 92 Ohio St.3d 74, 79, 748 N.E.2d 520. Such a step may be justified if it protects the officers or the driver from a dangerous condition during the traffic stop and is the least intrusive means to avoid the dangerous condition, id.; to avoid escalation of a volatile situation, *State v. Holley,* Montgomery App. No. 20371, 2004-Ohio-4264, 2004 WL 1807964; or if the officer has a reasonable, articulable belief that an individual is armed and/or dangerous or is engaged in criminal activity, *State v. Harden,* Montgomery App. No. 19880, 2004-Ohio-664, 2004 WL 259233; *State v. Dunfee,* Athens App. No. 02CA37, 2003-Ohio-5970, 2003 WL 22532819; *State v. Isbele* (2001), 144 Ohio App.3d 780, 784, 761 N.E.2d 697. An officer's convenience, however, will not justify placing a driver in the rear of a cruiser. *Lozada,* 92 Ohio St.3d at 76, 748 N.E.2d 520. Although the failure to produce a driver's license during a traffic stop is a lawful reason for detaining a driver in a patrol car, an officer clearly may not place a driver in his cruiser as a matter of course while he runs the license information through the computer. Id. at 77, 79, 748 N.E.2d 520.

■ {¶ 12} We agree with the trial court's conclusion that Deputy Vitali did not have a sufficient basis for detaining McCaulley in the back of the cruiser. It is undisputed that McCaulley produced a driver's license as requested and otherwise cooperated with the deputy. He was placed in the cruiser before Deputy Vitali learned that the license had been suspended, and, by the deputy's own admission, McCaulley was in the cruiser "for at least a half hour" before the cocaine was discovered. As the trial court observed, no safety reasons were cited for the use of this procedure, and Deputy Vitali did not have a reasonable, articulable suspicion that McCaulley had engaged in criminal activity prior to placing him in the cruiser. For these reasons, we agree with the trial court that "the subjective and intuitive suspicions of an experienced law enforcement officer do not constitutionally justify detaining the driver in the rear of the cruiser."[1]

■ {¶ 13} In the alternative, the state argues that, even if McCaulley's detention in the cruiser was impermissible, the deputy's error was harmless and did not warrant suppression because the cocaine would have inevitably been discovered in the course of a lawful investigation. Specifically, it claims that the cocaine would have been discovered through "a routine inventory search as part of a law enforcement agency's normal booking procedures."

{¶ 14} The cocaine was obviously on McCaulley's person rather than in his car when he entered the cruiser, because it was found in the cruiser. In other words, only a search of McCaulley's person would have turned up this evidence, not a search of his car. Thus, to prevail on its argument that the cocaine would have inevitably been discovered, the state must presume that McCaulley would have been arrested and then searched pursuant to that arrest. There is simply no evidence in the record to support this assertion. Deputy Vitali testified that driving without a license is "an arrestable offense," but it is clear from his testimony that he had not yet decided whether to arrest McCaulley when the cocaine was discovered in the cruiser. Therefore, we cannot conclude that the deputies would have inevitably searched McCaulley's person.

{¶ 15} The assignment of error is overruled.

{¶ 16} The judgment of the trial court will be affirmed.

Judgment affirmed.

BROGAN, P.J., and YOUNG, J., concur.

FREDERICK N. YOUNG, J., retired, sitting by assignment.

---

1. We also note that the discovery of marijuana seeds on the seat of McCaulley's car, which is not mentioned in the trial court's decision, occurred well after he was placed in Deputy Vitali's cruiser, when other deputies had arrived on the scene.