[Cite as *State v. Schriml*, 2013-Ohio-2845.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                    CASE NO. 9-12-32

      v.

MICHAEL D. SCHRIML,                  O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Marion Municipal Court
Trial Court No. TRC 11 7448A

Judgment Affirmed

Date of Decision:    July 1, 2013

APPEARANCES:

    *Jeff Ratliff* for Appellant

    *Steven E. Chaffin* for Appellee

**PRESTON, P.J.**

{¶1} Defendant-appellant, Michael D. Schriml ("Schriml"), appeals from the judgment of the Marion Municipal Court finding him guilty of operating a motor vehicle while under the influence of alcohol ("OVI") after his motion to suppress was denied and he entered a plea of no contest. We affirm.

{¶2} On September 16, 2011, at approximately 2:00 a.m., Schriml was stopped for a marked lanes violation when he made a right turn onto a one-way street. (Mar. 1, 2012 Tr. at 17-18). Following field sobriety tests, Schriml was placed under arrest and charged with an OVI in violation of R.C. 4511.19(A)(1)(a), a first-degree misdemeanor, operating a vehicle with a prohibited breath-alcohol concentration of .095 grams by weight of alcohol per 210 liters of breath in violation of R.C. 4511.19(A)(1)(d), a first-degree misdemeanor, and failure to drive within the marked lanes, a second moving violation, in violation of R.C. 4511.33 and a fourth-degree misdemeanor. (Doc. No. 1). The two alcohol-related offenses were assigned trial court case no. TRC 11 7448A, and the marked lanes violation was assigned trial court case no. TRC 11 7448B. (*Id.*).

{¶3} Schriml entered a written plea of not guilty and filed a motion to suppress. (Doc. Nos. 3, 12). In his suppression motion, Schriml claimed numerous errors and improprieties requiring the suppression of all evidence

obtained, including that the officer did not have a lawful reason to stop him; that there was no basis to detain and request field sobriety testing; that the field sobriety tests were not done in compliance with applicable rules and regulations; and, that the breath test was unconstitutionally coerced. (Doc. No. 12).

{¶4} Schriml also challenged whether the breath test was administered in substantial compliance with the Ohio Director of Health's rules and regulations and whether the equipment was in proper working order. More specifically, Schriml alleged that the State could not show: that the officer substantially complied with the operator's checklist instructions; that the test was conducted free of RFI; that the machine was in proper working order; that an instrument check had been done in accordance with the rules and regulations; that the solution used to perform the instrument check was valid and properly maintained; that the record of the instrument checks and records of maintenance and repairs were not retained as required by law; that the operator was licensed to operate the machine; and, that the persons performing the instrument check were currently licensed. (*Id.*).

{¶5} A hearing on the motion to suppress was held on March 1, 2012, at which time the trial court heard the testimony of State Trooper Tawana Young and

Schriml.  The trial court also viewed the video of the traffic stop and field sobriety tests, and several exhibits were admitted into evidence.[1]

{¶6} Trooper Young testified that she observed Schriml make a right turn from Main Street into the far left lane of Church Street (which was a one-way street), rather than turning into the right lane closest to the curb and then use his turn signal to move to the left.  (Mar. 1, 2012 Tr. at 17).  Trooper Young also testified that "[Schriml] went over the white dotted line by a full tire width," which was a violation of the marked lanes statute, R.C. 4511.33.  (*Id.* at 17-18).  Trooper Young waited for the traffic light to turn green, eventually caught up with Schriml, and followed him for a while after activating her camera, but she did not see any other traffic violations.  (*Id.* at 18).  Trooper Young testified that she activated her lights and made a traffic stop for the marked lanes violation.  (*Id.*).  She testified that she asked Schriml for his driver's license, registration, and proof of insurance.  (*Id.* at 19).  Trooper Young testified that, after Schriml handed her these items, she "asked [Schriml] if he would come back so [she] could check his driving record."  (*Id.* at 20).[2]  She testified that Schriml did not state that he did not want to comply, and that she would have said it was fine if Schriml did not want to accompany her to her vehicle.  (*Id.*).  Trooper Young testified that she stated to

---

[1] Testimony and exhibits concerning the BAC DataMaster testing and Schriml's medical records were also proffered, after the trial court sustained the State's objections as to their admission. (Mar. 1, 2012 Tr. at 83-88).

[2] Although Trooper Young testified that Schriml handed her his registration and proof of insurance, Schriml indicated during the traffic stop that he did not have those items in his possession.  (D's Ex. A).

Schriml "hey, would you come back so I can check your driving record," and there was no hesitation on his part to do so. (*Id.* at 20-21). Trooper Young testified that she really should have said "do you mind" exiting the vehicle or coming back to the vehicle, and, if the driver refuses, she cannot force them to accompany her. (*Id.* at 21). Trooper Young testified that, prior to Schriml entering her cruiser, she patted him down for officer safety. (*Id.*). Trooper Young testified that Schriml never objected to the pat down. (*Id.* at 22).

{¶7} Trooper Young testified that law enforcement officers invite drivers to their vehicle to check their driving record and to observe any odors of alcoholic beverage upon the driver's breath. (*Id.* at 22). Trooper Young then testified that, after Schriml was in her vehicle, she detected a "strong odor of alcoholic beverage" about his breath and observed that his eyes were glassy and bloodshot. (*Id.* at 23). She then asked Schriml whether he had consumed any alcoholic beverages, and he responded that he had a couple drinks during the evening. (*Id.*). Trooper Young then proceeded to conduct a horizontal gaze nystagmus ("HGN") test and observed five out of six clues for impairment. (*Id.* at 24, 31). Trooper Young testified that she then asked Schriml to perform the walk and turn test, which revealed three of eight possible clues for impairment. (*Id.* at 34, 40). Trooper Young testified that Schriml also performed the one-leg stand, which revealed two out of four possible clues for impairment. (*Id.* at 41, 44). Trooper

Young testified that Schriml was subsequently tested with results of .095 grams of alcohol per 210 liters of breath, which is over the legal limit. (*Id.* at 47).

{¶8} On cross-examination, Trooper Young testified that, beyond the initial traffic violations, she did not observe any clues while Schriml was driving that would have indicated possible impairment. (*Id.* at 50-51). She testified that Schriml pulled straight into a parking lot when she pulled him over, not into a particular parking spot, and she pulled her cruiser approximately six feet directly behind his vehicle. (*Id.* at 56-57). Trooper Young testified that she did not detect an odor of alcoholic beverage when she first contacted Schriml or when he exited the vehicle. (*Id.* at 59). She testified that she asked Schriml to exit the vehicle so she could check his driving record, and he exited the vehicle with no problems. (*Id.*). Trooper Young did not inform Schriml that he was not required to exit his vehicle or to come back to her cruiser. (*Id.* at 60). She testified that she was checking Schriml's driving record to determine if he had any previous moving violations. (*Id.* at 61). Trooper Young testified that Schriml's speech was fine. (*Id.*). She further testified that some drivers do not agree to exit the vehicle, but more drivers comply than do not. (*Id.* at 62-63). Trooper Young testified that she ran Schriml's driving record prior to beginning the HGN test. (*Id.* at 63). Trooper Schriml testified that she did not read Schriml his *Miranda* rights prior to asking him to sit in the front seat of her cruiser. (*Id.* at 64). She testified that the stop

was a routine traffic stop for a marked lanes violation, and Schriml was not twitching, agitated, or nervous. (*Id.*). Trooper Young testified that it was possible that Schriml had a strong odor of alcoholic beverage because he had just consumed his last drink. (*Id.* at 66). Trooper Young testified that, prior to performing the field sobriety tests, Schriml informed her that he was overweight and had poor balance. (*Id.* at 68). She testified that Schriml twice indicated that he had two vodka and cranberry drinks that evening. (*Id.* at 68-69). Trooper Young testified that Schriml could not perform the one leg stand and put his one foot down more than three times. (*Id.* at 71). She testified that she asked Schriml again about what he was drinking so he would indicate the size of the drinks, and Trooper Young testified that Schriml indicated that his last drink was about 20 minutes prior to his arrest. (*Id.* at 75-76).

{¶9} Schriml testified that he was at the Someplace Else bar immediately prior to the traffic stop, and he had one vodka cranberry drink. (*Id.* at 96-97). He testified that he exited the parking lot of the bar, turned right onto Main Street, and stopped at a traffic light. (*Id.* at 97). Schriml testified that he then turned right heading east on Church Street, turning into the first available lane to the right. (*Id.*). Schriml testified that Church Street is a three-lane, one-way street, and he turned into the first lane, not the third lane. (*Id.* at 97-98). He testified that he did not notice Trooper Young behind him until he heard the sound of an engine

accelerating, and he was already on Sergeant Street just coming out of the curve on the road. (*Id.* at 98-99). Schriml testified that he proceeded to park in a well-lit parking lot for safety reasons. (*Id.* at 99). He testified that, when Trooper Young asked him how many drinks he consumed, he stated two drinks. (*Id.*). He also testified that he weighs close to 300 pounds, is 6' 1" to 6' 2" tall, and is more than 50 pounds overweight. (*Id.* at 100). Schriml also testified that he has curvature of the spine, which causes his hips to be out of alignment, one leg is about an inch and a half longer than the other, and he has torticollis of the neck, all of which cause balance issues. (*Id.* at 100-101). He testified that he thought Trooper Young ordered him to exit his vehicle, and he did not have an option. (*Id.* at 101). He testified that Trooper Young was "in charge and [he] had to do what she said," and he felt like he was being detained when she patted him down for weapons. (*Id.*). Schriml testified that he felt obligated to answer Trooper Young's questions, and she did not Mirandize him. (*Id.* at 101-102). He testified that he was uncomfortable sitting on the ledge of her cruiser when she performed the HGN test, and that Trooper Young performed the test faster than reflected by her testimony. (*Id.* at 102). Schriml testified that he did not feel impaired while driving. (*Id.*). Defense counsel also proffered several exhibits, which were medical records concerning Schriml's back conditions. (*Id.* at 102-108).

{¶10} On cross-examination, Schriml testified that he started drinking after 11:00 p.m., and he had two drinks. (*Id.* at 109). He testified that he did not object to exiting his vehicle, but he did not want to give Trooper Young the impression that he was resisting arrest, either. (*Id.* at 109-110). He testified that he was familiar with the HGN test and had one before. (*Id.* at 110). Schriml testified that he could not perform either the one leg stand or the walk and turn tests, because he is overweight and his thighs rub together. (*Id.* at 112). He also testified that his Lasik eye surgery and frequent sinus surgeries may have affected the results of his HGN test, though he could say for sure. (*Id.* at 113).

{¶11} The trial court would not permit defense counsel to present any evidence or raise any questions regarding issues with the breath test and the BAC DataMaster. The trial court found that the defense had failed to provide sufficient fact-specific allegations in the motion to suppress that would put the State on notice of defense counsel's challenges to the breath test. (*Id.* at 7-14, 76-89).

{¶12} After hearing the testimony that was permitted, the trial court denied the motion to suppress and made the following findings:

> [T]he Court finds the charging officer to have probable cause and reasonable suspicion to stop [Schriml] and request [Schriml] to sit with her while checking his driving record, reasonable, articulable suspicion to prolong the stop, reasonable grounds to request [Schriml] to submit to the Standardized Field Sobriety Tests, and probable cause to arrest [Schriml]. Further, the Court finds, as stated on the record, the following: the standardized field sobriety tests and the BAC were administered in substantial compliance of

NHTSA regulations; the BAC test was not unconstitutionally coerced; the individual administering the alcohol test held the necessary credentials; the operator of the breath test assured that the test was free of any radio transmissions; the BAC was in proper working order, properly maintained and not in need of repairs at the time of the test; the solution is valid; and the breath testing procedure is not unconstitutional. (Doc. No. 20).

{¶13} The matter was scheduled for a jury trial, but Schriml subsequently entered a plea of no contest. On May 7, 2012, he was found guilty of OVI in violation of R.C. 4511.19(A)(1)(a), a first offense in six years.[3] The trial court sentenced Schriml to 90 days in jail, with 87 days suspended; ordered that he pay a fine of $1,000, with $450 suspended; and, suspended his operator's license for six months. (Doc. No. 50).

{¶14} On May 29, 2012, Schriml filed his notice of appeal. (Doc. No. 52). Schriml raises four assignments of error for our review.

### Assignment of Error No. I

**The stop of [Schriml's] vehicle was not supported by probable cause or a reasonable and articulable suspicion that [Schriml] had committed a traffic violation and the officer's continued detention of [Schriml] for the purpose of administering field sobriety tests was not supported by a reasonable and articulable suspicion separate from the initial stop of [Schriml's] vehicle.**

{¶15} In his first assignment of error, Schriml asserts that there was no basis for the initial traffic stop, and therefore, it was unlawful. He further

---

[3] The marked lanes violation, assigned case no. TRC 11 7448B, was dismissed as part of the plea negotiation.

maintains that there was no basis to continue to detain him, to remove him from his vehicle, and to conduct field sobriety tests.

{¶16} Appellate review of a decision on a motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and is in the best position to resolve factual questions and evaluate the credibility of witnesses. *Burnside* at ¶ 8; *State v. Carter*, 72 Ohio St.3d 545, 552 (1995). When reviewing a trial court's decision on a motion to suppress, an appellate court must uphold the trial court's findings of fact if they are supported by competent, credible evidence. *Burnside* at ¶ 8. With respect to the trial court's conclusions of law, however, our standard of review is de novo and we must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Wolfe*, 3d Dist. No. 11-11-01, 2011-Ohio-5081, ¶ 10; *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997).

{¶17} First, Schriml claims that the trial court erred in denying his motion to suppress because Trooper Young lacked probable cause or a reasonable, articulable suspicion justifying the stop of his vehicle. At the suppression hearing, Trooper Young testified that she effectuated the traffic stop because she witnessed Schriml drive outside of the marked lanes in violation of R.C. 4511.33. (Mar. 1,

2012 Tr. at 18). "Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop * * *." *Dayton v. Erickson*, 76 Ohio St.3d 3 (1996), syllabus, following *U.S. v. Ferguson*, 8 F.3d 385 (6th Cir.1993). Schriml contends that the Trooper's testimony is not credible because she was a block away from his vehicle when the violation occurred and could not have seen the violation from her vantage point. Credibility is best left to the trier of fact, however, and we will not second-guess the trial court's determination. *Carter*, 72 Ohio St.3d at 552. Since the trial court had competent, credible evidence that Schriml violated the law, the traffic stop was constitutionally permissible. *Erickson* at syllabus. Schriml also contends that the trooper stopped him to conduct a fishing expedition for suspected operation of a motor vehicle while under the influence. However, the law enforcement officer's ulterior motive, if any, is irrelevant once he has probable cause to believe a traffic violation occurred, which is the case here. *Id.*

{¶18} Next, Schriml argues that the Trooper did not have any evidence that he was impaired from which she could direct him from his vehicle. He argues that, in order to remove an individual from a vehicle for purposes of conducting field sobriety tests, the officer must have a reasonable and articulable suspicion to

believe the person was operating the motor vehicle while under the influence of alcohol or drugs.      Schriml further argues that Trooper Young lacked any justification to detain him beyond the original scope and purpose of the initial traffic stop for field sobriety tests.

{¶19} The State contends that it was reasonable for Trooper Young to continue the detention because she observed an odor of alcoholic beverage from the vehicle, and Schriml admitted he had consumed alcohol immediately upon stopping him.  In particular, the State represented that the following occurred:

> Upon initial contact with the Defendant, Trooper Young noticed an odor of alcoholic beverage coming from the vehicle.  Further, Trooper Young approached the passenger and explained the reason for the stop.  Trooper Young asked the driver whether he had consumed alcohol that evening and he admitted that he had.  Trooper Young asked the Defendant to step out of the car and he complied.

(Appellee's Brief at Statement of Facts).

{¶20} The State's brief has misrepresented the facts in this case.  According to Trooper Young, she did not smell any odor of alcoholic beverage when she approached the vehicle, when she asked Schriml if he would exit the vehicle, or when she patted him down for weapons.  (Mar. 1, 2012 Tr. at 19-20, 59).  Trooper Young did not smell the odor of alcoholic beverage upon Schriml until he was seated in her cruiser.  (*Id.* at 22-23, 62).  Furthermore, Schriml never admitted he consumed alcohol that evening until after Trooper Young smelled the odor of alcoholic beverage upon his breath while he was seated in the cruiser.  (*Id.* at 23,

-13-

64). Despite the State's incorrect representations of fact, Trooper Young was permitted to request that Schriml exit his vehicle and further justified in detaining Schriml for field sobriety tests.

{¶21} Trooper Young did not "remove" Schriml from his vehicle for the purpose of conducting field sobriety tests. When Trooper Young asked Schriml for his registration and proof of insurance, Schriml indicated that he did not have them in the vehicle. (D's Ex. A). Trooper Young then stated, "Why don't you come on out so I can check your driving record." (*Id.*). Schriml responded, "Sure" and stepped out of the vehicle, at which point Trooper Young stated, "Alright, come on back, follow me." (*Id.*). Trooper Young then checked Schriml for weapons and asked him to "[h]ave a seat in the front," pointing toward the cruiser. (*Id.*). Based upon our review of the record, we cannot conclude that Trooper Young "removed" Schriml from his vehicle for the purpose of conducting field sobriety tests; rather, she asked Schriml to exit the vehicle as a result of his traffic violation to check his driving record/status, which was permissible. *Pennsylvania v. Minns*, 434 U.S. 106, 111, 98 S.Ct. 330 (1977); *State v. Evans*, 67 Ohio St.3d 405, 408 (1993).

{¶22} Schriml next argues that his placement in the front seat was unreasonable since there was no concern for officer safety, citing *State v. Lozada*, 92 Ohio St.3d 74 (2001). The issue presented in *Lozada* was "whether it was

reasonable to search the defendant for weapons before placing him in [the] Trooper['s] patrol car." *Id.* at 75. *Lozada* thus concerned whether or not an officer may search a person for weapons and place them into a patrol car even when the officer did not have any reason to believe that the driver was armed and dangerous. *Id.* at 76. The Trooper in *Lozada* testified that it was his standard practice during routine traffic stops to remove drivers from their vehicles, pat them down for weapons, and place them into his cruiser. *Id.* at 75, 77. The Ohio Supreme Court was concerned that such a practice would effectively eviscerate the *Terry* standard. *Id.* at 75-76. Consequently, the Court held that that "during a routine traffic stop, it is unreasonable for an officer to search the driver for weapons before placing him or her in a patrol car, if the sole reason for placing the driver in the patrol car during the investigation is for the convenience of the officer." *Id.* at 77. In reaching this conclusion, though, the Court acknowledged that the mere placement of a driver into a cruiser may be constitutionally permissible. *Id.* at 76, citing *State v. Carlson*, 102 Ohio App.3d 585 (9th Dist.1995). The case at bar does not concern the constitutionality of the pat-down search since no evidence was discovered as a result of that search, and Schriml's reliance upon *Lozada* is misplaced. *State v. Serafin*, 11th Dist. No. 2011-P-0036, 2012-Ohio-1456, ¶ 25.

**{¶23}** Furthermore, in viewing the video of the traffic stop and evaluating the totality of the circumstances, we conclude that Schriml voluntarily exited his vehicle and sat in the cruiser. Aside from that, we believe that Trooper Young's decision to ask Schriml to sit in the front of her cruiser was reasonable in this case since Schriml was unable to provide her with his registration and proof of insurance. Under these circumstances, Trooper Young could have reasonably believed that Schriml was engaged in criminal activity, which would have separately justified placing him into her cruiser. *State v. McCaulley*, 161 Ohio App.3d 568, 2005-Ohio-2864, ¶ 11 (2d Dist.).

**{¶24}** Schriml next argues that his continued detention for field sobriety tests violated the Fourth Amendment. We disagree.

**{¶25}** Once an officer stops a vehicle for a minor traffic offense and begins the process of obtaining the offender's license and registration, the officer may then proceed to investigate the offender for OVI if the officer has a reasonable suspicion, based on specific and articulable facts separate from the facts that served as the impetus for the traffic stop, that the detainee is under the influence. *State v. Evans*, 127 Ohio App.3d 56, 62-63 (3d Dist.1998), citing *State v. Yemma*, 11th Dist. No. 95-P-0156 (Aug. 9, 1996).

**{¶26}** Whether a law enforcement officer possessed reasonable suspicion or probable cause to continue to detain an individual must also be examined in light

of the "totality of the circumstances." *State v. Cromes*, 3d Dist. No. 17-06-07, 2006-Ohio-6924, ¶ 38, citing *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744 (2002). Circumstances from which an officer may derive a reasonable, articulable suspicion that the detained driver was operating the vehicle while under the influence include, but are not limited to:

> (1) the time and day of the stop (Friday or Saturday night as opposed to, e.g., Tuesday morning); (2) the location of the stop (e.g., whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath; (8) the intensity of that odor, as described by the officer ("very strong," "strong," "moderate," "slight," etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11)

the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given. *Evans*, 127 Ohio App.3d at 63, fn. 2.

"All of these factors, together with the officer's previous experience in dealing with [impaired] drivers, may be taken into account by a reviewing court in determining whether the officer acted reasonably. No single factor is determinative." *Id.*

{¶27} Trooper Young testified that she has worked as an Ohio State Highway Patrol Officer for over nine years and has participated in hundreds of OVI cases. (Mar. 1, 2012 Tr. at 15-16). In this case, Trooper Young observed Schriml travel over the marked traffic lanes around 2:00 a.m. Friday morning, not very far from a local bar. (*Id.* at 17-18). After Schriml was in the front passenger seat of the cruiser, Trooper Young observed a strong odor of alcoholic beverage, and then Schriml subsequently admitted to having two drinks. (*Id.* at 23); (D's Ex. A). Trooper Young also observed that Schriml's eyes were glassy and bloodshot. (Mar. 1, 2012 Tr. at 23). After observing all these things, Trooper Young began administering the HGN test. After reviewing the totality of the circumstances, we conclude that Trooper Young had a reasonable, articulable suspicion to continue the traffic stop for purposes of conducting field sobriety testing.

{¶28} Schriml's first assignment of error is, therefore, overruled.

## Assignment of Error No. II

**The trial court erred in refusing to permit [Schriml] to introduce evidence regarding the administration of the chemical test and finding the chemical test was done in substantial compliance with the Ohio Department of Health rules and regulations.**

{¶29} In his second assignment of error, Schriml argues that the trial court erred by forbidding him from introducing evidence regarding the administration of the chemical test finding that he failed to give the State sufficient notice of these claims.

{¶30} When seeking to suppress breath test results, the defendant must first set forth an adequate basis for the motion. *State v. Shindler*, 70 Ohio St.3d 54, 58 (1994). The motion must state the "legal and factual bases with sufficient particularity to place the prosecutor and court on notice [as to] the issues [contested]." *Id.* at 58; Crim.R. 47. On the other hand, a mere technical challenge to a breath test is sufficient even without case-specific allegations. *State v. Yeaples*, 180 Ohio App.3d 720, 2009-Ohio-184, ¶ 21 (3d Dist.) (citations omitted).

{¶31} Once the defendant has established an adequate basis for the motion, the State must then demonstrate substantial compliance with the Ohio Department of Health regulations. *Xenia v. Wallace*, 37 Ohio St.3d 216, 220 (1988). However, the extent of the state's burden to show substantial compliance varies with the degree of specificity of the violation alleged by the defendant. *Yeaples* at

¶ 23. "When a defendant's motion to suppress raises only general claims, along with the Administrative Code sections, the burden imposed on the state is fairly slight." *State v. Johnson*, 137 Ohio App.3d 847, 851 (12th Dist.2000). In particular, if the defendant's motion fails to allege a fact-specific way in which a violation has occurred, the State must offer only basic testimony evidencing compliance with the code section. *Yeaples* at ¶ 23, citing *State v. Bissaillon*, 2d Dist. No. 06-CA-130, 2007-Ohio-2349, ¶ 15.

{¶32} The motion to suppress in this case stated several alleged violations of the Ohio Administrative Code with respect to the breath test; however, the memorandum attached did not specifically allege any fact-specific way in which the violation occurred. (Doc. No. 12). Under these circumstances, the trial court did not err by excluding evidence relevant to particular violations of which the State did not have sufficient notice. Furthermore, the State was required to have only basic testimonial evidence of compliance, which was done through Trooper Young's testimony in this case. (Mar. 1, 2012 Tr. at 45-49); *Yeaples* at ¶ 23.

{¶33} Schriml's second assignment of error is, therefore, overruled.

### Assignment of Error No. III

**The trial court erred in finding the field sobriety tests were done in substantial compliance with NHTSA or its equivalent.**

{¶34} In his third assignment of error, Schriml argues that the trial court erred in finding that the field sobriety tests were done in substantial compliance

with the NHTSA manual. In particular, Schriml argues that the State failed to introduce the manual or, alternatively ADAP guidelines, at the hearing.

{¶35} In response to a motion to suppress regarding OVI field sobriety tests, the State must show the requisite level of compliance with accepted testing standards, typically the NHSTA. *State v. Loveridge*, 3d Dist. No. 9-06-46, 2007-Ohio-4493, ¶ 11 (citations omitted). Consequently, part of the State's burden "'includes demonstrating what the NHTSA requirements are, through competent testimony and/or introducing the applicable portions of the NHTSA manual.'" *Id.*, quoting *State v. Djisheff*, 11th Dist. No.2004-T-0123, 2006-Ohio-6201, citing *State v. Brown*, 166 Ohio App.3d 638, 2006-Ohio-1172. "HGN test results are admissible absent expert testimony so long as the proper foundation has been shown as to the administering officer's training and ability to administer the test and as to the actual technique used by the officer in administering the test." *State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, ¶ 27.

{¶36} Trooper Young testified that she has been employed with the Ohio State Highway Patrol for over nine years, and she had been trained in the techniques and procedures involving the apprehension and detection of persons suspected of alcohol use, including ADAP training and yearly refresher courses. (Mar. 1, 2012 Tr. at 14-15). Trooper Young testified that she was also trained in field sobriety testing and testified concerning the requirements for HGN testing,

according to her training. (*Id.* at 15, 27-28). Trooper Young also testified that if she detected all six clues in the eyes during an HGN test, there was a 77% chance that a person is over the legal limit of .08 grams of alcohol per 210 liters of breath, according to the NHTSA manual. (*Id.* at 33). She further testified that "[d]ue to training, the NHTSA manual, with the walk and turn test, two clues shows that there's a 68 percent chance that the person could be over the legal limit, and [Schriml] had a total of three." (*Id.* at 41). (*See also Id.* at 44). Consequently, the State produced sufficient evidence that the field sobriety tests were conducted in compliance with the NHSTA manual or ADAP guidelines. *State v. Powers*, 6th Dist. No. L-04-1210, 2005-Ohio-5737, ¶ 21.

{¶37} Schriml's third assignment of error is, therefore, overruled.

### Assignment of Error No. IV

**The trial court erred in finding the officer possessed probable cause to arrest [Schriml].**

{¶38} In his fourth assignment of error, Schriml argues that the trial court erred in finding that Trooper Young had probable cause to arrest him for OVI. In particular, Schriml contends that the field sobriety tests were not done in substantial compliance with the NHTSA manual; and therefore, the only "valid" evidence available to the Trooper was an odor of alcoholic beverage and his admission to consuming two alcoholic drinks.

{¶39} "In determining whether the police had probable cause to arrest an individual for [OVI], we must consider whether, at the moment of arrest, the police had information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence." *State v. Thompson*, 3d Dist. Nos. 14-04-34 and 14-04-35, 2005-Ohio-2053, ¶ 18, citing *State v. Homan*, 89 Ohio St.3d 421 (2000), superseded by statute on other grounds as stated in *Bozcar*, 2007-Ohio-1251. The existence of probable cause is based on the totality of the circumstances. *Cromes*, 2006-Ohio-6924, at ¶ 38, citing *Arvizu*, 534 U.S. at 273.

{¶40} Since we have determined that the State presented sufficient evidence to demonstrate substantial compliance with the NHSTA manual, the clues observed by Trooper Young during the field sobriety tests are relevant for a determination of probable cause for arrest here. Prior to the arrest, Trooper Young observed Schriml travel over the marked traffic lanes around 2:00 a.m. Friday morning, not very far from a local bar. (Mar. 1, 2012 Tr. at 17-18). After Schriml was in the front passenger seat of the cruiser, Trooper Young observed a strong odor of alcoholic beverage, and then Schriml subsequently admitted to having two drinks. (*Id.* at 23); (D's Ex. A). Trooper Young also testified that Schriml's eyes were glassy and bloodshot. (Mar. 1, 2012 Tr. at 23). Thereafter, Trooper Young observed five out of six clues on the HGN test, three out of eight clues on the walk

and turn test, and two out of four clues on the one-leg stand. (*Id.* at 31, 40, 44). In light of all of those circumstances, Trooper Young had sufficient cause to believe that Schriml was operating his vehicle while under the influence of alcohol. Therefore, the trial court did not err by finding that Trooper Young had probable cause to arrest Schriml.

{¶41} Schriml's fourth assignment of error is, therefore, overruled.

{¶42} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, J., concurs.**

**/jlr**

**WILLAMOWSKI, J., dissents.**

{¶43} I must respectfully dissent from the majority's decision in the first assignment of error, which attempts to justify the Trooper's actions in ordering Schriml out of his car, frisking him, and placing him in the police cruiser for further custodial interrogation for the admitted purpose of placing him in close quarters so that she could attempt to detect an odor of alcohol on his breath. This type of infringement on Schriml's rights in order to conduct a "fishing expedition" is not permissible.

{¶44} It is well-established that once an officer lawfully stops an individual, the officer must carefully tailor the scope of the stop "to its underlying justification." *Florida v. Royer*, 460 U.S. 491, 500 (1983); *see, also, State v. Gonyou*, 108 Ohio App.3d 369, 372 (6th Dist.1995). Additionally, the length of the stop must last no longer than is necessary to effectuate the purpose of the stop. *Royer*, 460 U.S. at 500. Furthermore, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in as short a period of time. *State v. Duran*, 9th Dist. No. 11CA009969, 2012-Ohio-2114, ¶ 14, *quoting Royer*; *see also United States v. Brignoni–Ponce*, 422 U.S. 873, 881–882 (1975).

{¶45} "The rule set forth in *Royer* is designed to prevent law enforcement officers from conducting 'fishing expeditions' for evidence of a crime." *State v. Cromes*, 3d Dist. No. 17-06-07, 2006-Ohio-6924, ¶ 35, *citing Gonyou, supra.* Various activities, including following a script, prolonging a traffic stop in order to "fish" for evidence, separating an individual from his car and engaging in "casual conversation" in order to observe "body language" and "nervousness," have been deemed (depending on the overall facts of the case) to be manipulative practices which are beyond the scope of "the fulfillment of the purpose for which the stop was made." *State v. Correa*, 108 Ohio App.3d 362, 368 (6th Dist.1995).

Case No. 9-12-32

{¶46} The Supreme Court of Ohio has stated that "[w]e do not take lightly the encroachment into one's personal liberty by allowing a driver to be placed in a patrol car and subjecting him or her to a pat-down search for weapons."[4] *State v. Lozada*, 92 Ohio St.3d 74, 79, 2001-Ohio-149. The Supreme Court of Ohio further stated:

> Placing a driver in a patrol car during a routine traffic stop increases the intrusive nature of the detention. *Goss v. State* (Fla.App.1999), 744 So.2d 1167, 1168. Subjecting a driver to a pat-down search for weapons before placing the driver in a patrol car further increases the level of intrusion because "[e]ven a limited search of the outer clothing for weapons constitutes a severe, though brief, intrusion upon cherished personal security, and it must surely be an annoying, frightening, and perhaps humiliating experience." *Terry*, 392 U.S. at 24–25, 88 S.Ct. at 1881–1882, 20 L.Ed.2d at 908.

*Lozada*, 92 Ohio St.3d at 78-79. The Supreme Court of Ohio held that "[d]uring a routine traffic stop, it is unreasonable for an officer to search the driver for weapons before placing him or her in a patrol car, if the sole reason for placing the driver in a patrol car during the investigation is for the convenience of the officer." *Id.* at paragraph two of the syllabus. *See also State v. McCaulley*, 161 Ohio App.3d 568, ¶ 11 (2d Dist. 2005).

---

[4] The Court did find such action to be justified if it protects the officers or the driver from a dangerous condition during the traffic stop. However, that exception is inapplicable in this case as there was absolutely no evidence in the record that the Trooper believed there was any danger in this situation. To the contrary, the testimony of *both* the Trooper and Schriml was uncontroverted that this was not a dangerous situation. Schriml was alone, appeared non-threatening, was polite and cooperative, and told the Trooper that he did not have any weapons when she inquired. He pulled over as soon as it was safe, and parked in a well-lit parking lot right by the road. The Trooper's vehicle prevented Schriml from leaving, and she was clearly in charge of the entire situation, while Schriml politely and meekly complied with the Trooper's orders and instructions.

{¶47} In spite of the fact that this was a de minimus traffic violation and the Trooper had not observed any signs of impairment, either in his driving while she followed him, or upon initiating the traffic stop, Trooper Young told Schriml to get out of his car, brusquely directed him where to stand, demanded that he remove his hands from his pockets, frisked him, and then ordered him to go sit in the patrol car.[5] Without a reasonable, articulable suspicion of impaired driving or another crime, Trooper Young's actions were unwarranted according to law. The Trooper's own testimony verified the fact that the purpose in doing this was what she had been taught to do (i.e., "following a script") in order to "fish" for evidence unrelated to the original traffic stop. Trooper Young testified:

> Q.   What was the purpose of getting [him] into the car, other than checking the license and everything?
>
> A.   The driving record?  *We bring people back to our vehicles because we're in close contact,* there's no alcohol in our patrol car, and while we're checking the driving record, *and also within that close contact we want to see if we observe any odor of an alcoholic beverage emanating about their breath.*
>
> Q.   Is that something you've been trained in to observe and consider as part of the clues in the investigation?
>
> A.   Yes.

(Emphasis added.  Tr. 22)

---

[5] Although Trooper Young testified that she "asked" him if he would "accompany" her back to her vehicle (Tr. 20), the video clearly indicates that he was told to get out of his car, and then she proceeded to abruptly order him around, and then she told him to sit in her car. Schriml testified that he felt like he was being detained, that she was in charge, and that he did not have any choice but to obey her directions. (Tr. 101-102)

**{¶48}** It is true that a police officer may order a driver to get out of a car which has been properly stopped for a traffic violation, even without suspicion of criminal activity. *See Pennsylvania v. Mimms*, 434 U.S. 106 (1977). "The police have already lawfully decided that the driver shall be briefly detained; the only question is whether he shall spend that period sitting in the driver's seat of his car or standing alongside it." *State v. Evans*, 67 Ohio St.3d 405, 408, 1993-Ohio-186. While the Majority claims that the Trooper "asked" Schriml to exit the vehicle (see ¶ 8), the video of the traffic stop clearly indicates that she told him to step out. The tone of her voice when she stated "Why don't you come on out so I can check your driving record," clearly conveyed a command – not a question, and her testimony confirms that she really did not give him any choice in the matter. (Tr. 60). However, that is not an issue, since it was proper for her to request that he exit the vehicle. Schriml willingly complied, and told her "sure." However, that was the *last and only time* that Schriml willingly gave his consent to comply with the Trooper's orders before he was ordered into the patrol vehicle. From that point forward, the video recording demonstrates that the Trooper abruptly commanded that he: "Come on back!"; "Keep your hands out of your pocket! Face that way!"; "Over here! Over here!" [directing him where to stand]; and, "Have a seat in the front," which was also a clear command, not an invitation. Schriml testified that he felt like he was being detained, that the Trooper was in

charge, and that he did not have an option other than to do what she said. (Tr. 101)

{¶49} *If* Trooper Young had any probable cause to proceed to administer the field sobriety tests,[6] it did not arise until *after he was in the patrol car* when she claimed that she smelled "a strong odor of alcohol" and he acknowledged that he had a couple of drinks.[7] However, the investigative stop should have never gotten to that point, and therefore, any evidence gathered as a result should have been suppressed. There was no valid reason for the Trooper to have done anything beyond verifying Schriml's driving record and issuing the traffic ticket. It was not necessary for Schriml to be placed in the patrol car while she radioed in to check his record.

{¶50} The Majority tries to justify the Trooper's actions by speculating that the Trooper "could have reasonably believed that Schriml was engaged in criminal activity." This was because of the fact that, after Schriml produced his driver's

---

[6]Even the odor of alcohol and Schriml's admission that he had had a couple of drinks may not have been sufficient. *See*, *State v. Stricklin*, 6th Dist. No. L-10-1277, 2012-Ohio-1877, ¶ 15 (a slight odor of alcohol, glassy, bloodshot eyes, and admission of having consumed a "couple" of beers, were not sufficient factors to support a reasonable articulable suspicion of DUI when stopped for a de minimus traffic violation without any erratic driving or other behaviors which would indicate intoxication); *State v. Spillers*, 2d Dist. No. 1504, 2000 WL 299550 (Mar. 24, 2000) (Traffic violations of a de minimus nature, combined with a slight odor of an alcoholic beverage, and an admission of having consumed a "couple" beers, are not sufficient to support a reasonable and articulable suspicion of DUI); *State v. Dixon*, 2d Dist. No.2000–CA–30, 2000 WL 1760664 (Dec. 1, 2000) (mere detection of odor of alcohol and glassy, bloodshot eyes at 2:20 a.m., unaccompanied by any basis to correlate the odor with a level of intoxication which would impair driving ability, did not justify administration of field sobriety tests).

[7]However, it seems somewhat unusual that there was suddenly such a "strong odor of alcohol" after he was in the patrol car; yet, the Trooper did not testify that she smelled any alcohol when she approached the car, when she told him to get out of the car, or when she was in close proximity to him while she patted him down for weapons.

license, he explained to her that he had just cleaned out his glove compartment and he did not have his insurance and registration with him. Trooper Young seemed to accept this explanation and did not question Schriml any further concerning this matter, nor did she testify or indicate on her report at any time that she had any concerns about further criminal activity. Without *any evidence in the record*, it is not for this Court to resort to speculation in order to create an excuse for an officer's actions when the Trooper herself gives no indication of the existence of such reasoning. Nor does the Majority cite to any authority whereby the lack of an insurance or registration card is considered an indicator of "criminal activity" in a situation such as this. *Compare*, *State v. Dozier*, 187 Ohio App.3d 804, 2010-Ohio-2918 (2d Dist.) (even when a traffic offender is not able to produce *any* identification or driver's license, it is not proper to justify a patdown for weapons).

{¶51} The authority of the Supreme Court of Ohio as set forth in *Lozada* is very clear. Yet, the Majority claims that reliance upon *Lozada* is "misplaced" because this case "does not concern the constitutionality of the pat-down search since no evidence was discovered as a result of that search." Just because no contraband was found does not excuse the Trooper's improper actions. That would be comparable to saying that it is not unconstituional for police officers to break down your door, enter your home, and conduct a warrantless search of your premises, as long as no evidence was found! Schriml's rights to be free from

-30-

unreasonable search and seizure were infringed upon. The police do not have the authority to stop anyone for a de minimus traffic offense and frisk them merely because they might be "guilty" of the "crime" of driving at 2:00 a.m.

{¶52} In this case, the Trooper's protocol clearly qualified as an improper fishing expedition in that she went far beyond what was necessary to complete the original purpose for which the initial stop was made. Trooper Young was admittedly searching for evidence of an additional crime, even though she was not able to articulate any facts in support of her continued search. This was improper.

> When a police officer's objective justification to continue detention of a person * * * is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure.

*State v. Robinette*, 80 Ohio St.3d 234, 1997-Ohio-343, paragraph one of the syllabus

{¶53} According to the Trooper's own testimony, Schriml had done nothing more than make a slightly improper, or imprecise, right-hand turn at 2:00 a.m. (when there were no other cars on the road, according to the video recording). His behavior, his demeanor, and his interactions with the Trooper were appropriate, polite, completely respectful, and gave no indication of impairment. The Trooper testified that his speech was completely normal. And yet, Schriml found himself being frisked down by the side of the road, made to sit inside a

police cruiser, and subjected to further questioning concerning his activities that evening. The Trooper's own testimony indicated that it was routine practice to place drivers in the patrol vehicle to try to detect whether the driver may have consumed any alcohol.

{¶54} Accordingly, I would have found that the Trooper's actions went beyond the bounds of what was permitted by law, and therefore, the motion to suppress should have been granted. There was also some validity to several of the issues Schriml raised concerning the implementation of field sobriety tests, especially concerning his inability to perform some of the tasks due to his obesity and other serious physical limitations that likely had an impact on the results. However, as stated above, I believe the case should not have even proceeded to the point of administering the field sobriety tests, *if* the Trooper had not conducted an investigation far beyond what was permissible under the law, and would reverse on those grounds.