[Cite as *State v. Binkley*, 2023-Ohio-2532.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                CASE NO. 2-23-04

      v.

SUSAN ELAINE BINKLEY,               O P I N I O N

      DEFENDANT-APPELLANT.


Appeal from Auglaize County Municipal Court
Trial Court No. 2022 TRC 4699

Judgment Affirmed

Date of Decision: July 24, 2023


APPEARANCES:

    *Nick A. Catania* **for Appellant**

    *Joshua Muhlenkamp* **for Appellee**

**WALDICK, J.**

{**¶1**} Defendant-appellant, Susan Elaine Binkley ("Binkley"), brings this appeal from the February 9, 2023, judgment of the Auglaize County Municipal Court sentencing her to community control after she pled no contest to, and was convicted of, OVI and Littering. For the reasons that follow, we affirm the judgment of the trial court.

*Background*

{**¶2**} On July 22, 2022, Binkley was charged with OVI in violation of R.C. 4511.19(A)(1)(a), and Littering in violation of R.C. 4511.82. She originally pled not guilty to the charges.

{**¶3**} On September 6, 2022, Binkley filed a suppression motion arguing, *inter alia*, that the arresting officer lacked reasonable suspicion to expand the scope of the traffic stop to an OVI investigation. A hearing was held on Binkley's motion on November 17, 2022. The trial court took the matter under advisement and then issued a written entry denying Binkley's suppression motion on January 23, 2023.

{**¶4**} Following the denial of her suppression motion, Binkley withdrew her pleas of not guilty to the charges and entered pleas of no contest. The trial court then conducted a Crim.R. 11 hearing and determined that Binkley was entering knowing, voluntary, and intelligent pleas. The trial court accepted Binkley's pleas and found

her guilty.[1] Binkley was sentenced to community control, which included a 72-hour Driver's Intervention Program.

**{¶5}** A judgment entry memorializing Binkley's sentence was filed February 9, 2023. It is from this judgment that Binkley appeals, asserting the following assignment of error for our review.

### First Assignment of Error

**The trial court erred in admitting evidence obtained after the officer expanded the scope of the stop from a "Terry Stop" to an OVI investigation without reasonable suspicion to do so.**

**{¶6}** In her assignment of error, Binkley argues that the trial court erred by determining that the arresting officer had a reasonable suspicion to expand the scope of the traffic stop to an OVI investigation.

Standard of Review

**{¶7}** "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id.* When reviewing a ruling on a motion to suppress, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). With respect to the

---

[1] At the change-of-plea hearing, the State indicated that a urine screen conducted as a result of Binkley's arrest showed the presence of Gabapentin, Norfentanyl, THC, and Amphetamines.

trial court's conclusions of law, however, our standard of review is de novo, and we must independently determine whether the facts satisfy the applicable legal standard. *Id.*

Relevant Authority

{¶8} Once a driver has been lawfully stopped, an officer may not administer field sobriety tests unless the invasion of privacy is separately justified by a reasonable suspicion based upon articulable facts that the motorist is impaired. *See, e.g.*, *State v. Schriml*, 3d Dist. Marion No. 9-12-32, 2013-Ohio-2845, ¶ 25. Importantly, reasonable suspicion does not require an officer to observe and relate overt signs of intoxication. *State v. Carpenter*, 3d Dist. Auglaize No. 2-22-20, 2023-Ohio-1702, ¶ 7. Rather, "[a] court will analyze the reasonableness of the request based on the totality of the circumstances, viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold." *Cleveland v. Maxwell*, 8th Dist. Cuyahoga No. 104964, 2017-Ohio-4442, ¶ 20; *Carpenter* at ¶ 7.

{¶9} Circumstances from which an officer may derive a reasonable, articulable suspicion that the detained driver was operating the vehicle while under the influence include, but are not limited to:

> **(1)   the time and day of the stop (Friday or Saturday night as opposed to, e.g., Tuesday morning); (2) the location of the stop (e.g., whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of**

**coordination (speeding, weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath; (8) the intensity of that odor, as described by the officer ("very strong," "strong," "moderate," "slight," etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given**.

*State v. Schriml*, 3d Dist. Marion No. 9-12-32, ¶ 26. "We do not view any single factor in isolation." *State v. Null*, 3d Dist. Logan No. 8-19-50, 2020-Ohio-3222, ¶ 19.

Evidence Presented at Suppression Hearing

**{¶10}** On July 27, 2022, Sergeant Brian Christopher of the St. Mary's Police Department was off duty, beginning a workout at "Snap Fitness" in St. Mary's when he observed Binkley walking strangely in the building. Sergeant Christopher testified that she was "flaring her arms to her side, she was staggering back and forth. It just didn't seem right." (Supp. Tr. at 4). Sergeant Christopher thought that either Binkley was "under the influence of something" or there was "some handicap." (*Id*. at 8). Sergeant Christopher testified that other individuals present at

the gym noticed Binkley and indicated there might be something wrong or that she was "high." (*Id*. at 6).

**{¶11}** Sergeant Christopher continued to observe Binkley as she nearly fell down while she was going into the parking lot, then he saw her "stagger[]" back to her car and sit in it for "some time." (*Id*. at 5). As a result of his observations, Sergeant Christopher contacted Sergeant Lucas Turpin of the St. Mary's Police Department, who was on duty at the time, to express concern about Binkley. Sergeant Christopher identified the vehicle Binkley was in, which was an older truck in "rough shape." (*Id*. at 6).

**{¶12}** Sergeant Turpin received the message from Sergeant Christopher, which included a description of the truck and a license plate number. Sergeant Turpin responded to the area and eventually located the vehicle at a Shell gas station. He observed Binkley getting into the truck at that time.

**{¶13}** Sergeant Turpin followed Binkley's vehicle and observed garbage fly out of the bed of her truck and onto the ground. Once he caught up to Binkley's vehicle and confirmed the license plate, he activated his overhead lights and initiated a traffic stop.

**{¶14}** Sergeant Turpin testified that Binkley's vehicle stopped "abruptly." (Tr. at 15). In fact, he testified that she stopped so quickly that he also had to stop abruptly to avoid a collision with her. Further, Sergeant Turpin testified that when

Binkley stopped, her right tires were just over the white fog line of the exit lane so she was stopped somewhat in the lane despite having plenty of room to get out of the lane on the right.

{¶15} Sergeant Turpin approached the vehicle and made contact with Binkley, who only cracked her window "a couple inches." (*Id*. at 16). As he spoke with Binkley, he noticed that her speech was slurred and she was mumbling at times, making it hard for him to understand. He also noticed that Binkley's eyes were "very constricted," so he asked her to pull her glasses down. (*Id*.) When she did, he shined his flashlight in her eyes and noticed that her eyes did not change at all, her pupils remained extremely constricted.

{¶16} Sergeant Turpin asked Binkley if she was under the influence of anything and Binkley stated that she had a medical marijuana card and she had smoked earlier that day. Sergeant Turpin told Binkley that she was very fidgety and asked her if she had used "meth." Binkley responded that she had ADHD and consumed a lot of coffee.

{¶17} Based on the totality of the circumstances, Sergeant Turpin felt Binkley was possibly under the influence of some type of prescription drug or narcotic, so he asked Binkley to step out of her vehicle to perform field sobriety tests.[2]

---

[2] Testimony at the suppression hearing continued, detailing the field sobriety tests and the information obtained from them such as Sergeant Turpin detecting six of six clues on the HGN test, six of eight clues on

Analysis

**{¶18}** Binkley contends that when analyzing the totality of the circumstances, the evidence did not support a reasonable suspicion that she was intoxicated by drugs or narcotics. Thus she contends that it was improper for Sergeant Turpin to ask her to get out of her vehicle and perform field sobriety tests.

**{¶19}** Binkley emphasizes that there was some evidence presented that was *not* indicative of intoxication. For example, Sergeant Turpin did not observe any erratic driving by Binkley, and Sergeant Turpin did not detect an odor of alcohol or marijuana from inside the vehicle or from Binkley. She contends that these factors should have weighed strongly against a reasonable suspicion to expand the traffic stop into an OVI investigation.

**{¶20}** At the outset of our review, we disagree with Binkley's assessment of the record with regard to her driving. Sergeant Turpin testified that Binkley stopped abruptly and that she stopped unusually in the road, with her right tires just over the white fog line. While these driving issues *alone* might not be indicative of any specific type of intoxication, they are relevant when combined with the remainder of the totality of the circumstances.

**{¶21}** The totality of the circumstances in this case included the observations of Sergeant Christopher, which were relayed to Sergeant Turpin. *See State v.*

---

the walk-and-turn test, and three of four clues on the one-leg-stand test; however, the field sobriety tests are not relevant to this appeal.

*Bearer*, 9th Dist. Wayne No. 21AP0035, 2022-Ohio-4554, ¶ 15 (stating tips by identified citizen informants may be considered highly reliable). The totality of the circumstances also included Sergeant Turpin's observations that Binkley had slurred speech, that she was talking fast, that she was fidgety, and that her pupils were not reactive when light was shined in her eyes. Further, Binkley also admitted to Sergeant Turpin that she had used medical marijuana earlier that day.

**{¶22}** When reviewing all the circumstances that were present, we find that Sergeant Turpin had a reasonable suspicion to expand the scope of the traffic stop to an OVI investigation and to ask her to perform field sobriety tests. While Binkley attempts to have certain factors weigh more strongly in her favor, or to have certain factors viewed in isolation, our review concerns the totality of the circumstances, which supports expansion of the traffic stop here. *State v. Carpenter*, 3d Dist. Auglaize No. 2-22-20, 2023-Ohio-1702, ¶ 15. Therefore, Binkley's assignment of error is overruled.

### *Conclusion*

**{¶23}** Having found no error prejudicial to Binkley in the particulars assigned and argued, her assignment of error is overruled and the judgment of the Auglaize County Municipal Court is affirmed.

***Judgment Affirmed***

**MILLER, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**